## Dunham et al. *versus* Haggerty et al.

1. Under a deed, whereby the grantor conveyed all the bituminous coal and minerals under certain land together with all the necessary mining rights and privileges for which the grantee covenanted " to pay twenty-five cents for each and every ton of 2,150 pounds screened coal so mined by them," the grantee is not obliged to pay for the slack taken and sold by him.

2. The meaning of the words " screened coal," as used in the above contract, is such coal as would pass over the customary screen in general use in the region where this mine was situated; the testimony being conflicting in this case, it was for the jury to determine whether such screen had been used.

3. Where the grantee under the above deed made statements of the amount of coal taken and weighed and paid for the same taking receipts in full, such receipts will not operate as an estoppel if it can be shown that the grantees omitted to screen coal that should have been screened.

4. The point at issue in the present case being whether the parties understood that screened coal included both lump and nut, payment for nut coal cannot be avoided on the ground that the lump coal was badly screened and included nut coal and refuse.

October 14th, 1885. Before MERCUR, C. J., GORDON, PAXSON, TRUNKEY, STERRETT, GREEN and CLARK, JJ.

ERROR to the Court of Common Pleas of *Mercer county:* Of October and November Term 1885, No. 78.

Covenant, by Sarah Haggerty et al., heirs of Wm. Haggerty, deceased, against W. B. Dunham, Joseph McCleery et al., upon a contract under seal entered into by plaintiffs and defendants. Pleas, *non est factum*, covenants performed, etc.

On the trial, before NEALE, P. J., of the thirty-third judicial district, the following facts appeared :

On October 7th, 1871, plaintiffs conveyed to Dunham and McCleery, all the coal and other minerals under a certain described tract of land together with all the necessary mining rights and privileges and the grantees covenanted in consideration therefor " to pay twenty-five cents for each and every ton of 2,150 pounds of screened coal mined by them " and

[Dunham v. Haggerty.]

further agreed that all coal mined by them on the premises should " be weighed accurately and the weight entered in a book kept for that purpose." Dunham and McCleery went into possession under this deed and subsequently conveyed two thirds of the estate so vested in them to P. L. Kimberly et al., who are joined as defendants in this suit.

These parties mined continuously until February 1883, when the mine was exhausted. During this period they furnished plaintiffs with monthly statements of screened coal mined and made half yearly settlements and payments as required by the contract. Receipts for all payments were taken, a few being for payment on account, but generally they are in full and in form substantially the same as the following, which is a copy of one :

" Received, Sharon, Pa., April 18th, 1883, of Dunham, Roberts & Co., three hundred thirteen and 11–100 dollars, being balance due in full of royalty on coal mined to January 1st, 1883, from lands of the heirs of William Haggerty, late of Hickory township, deceased, under a lease or contract from Sarah Haggerty et al., to Joseph McCleery and W. B. Dunham, dated October 7th, A. D., 1871, said land being described in said lease."

After the mine was abandoned plaintiffs demanded payment for the slack and nut coal, for which they maintained defendants were liable because they had removed and sold the same.

Plaintiffs produced evidence to show that nut coal had a market value and that the slack which came through the screens used by defendants amounted to about one fifth of the coal mined and that one half of this was good nut coal.

Defendants produced evidence to show that previous to 1869 nut coal was made at a few of the mines in this section, but in that year a general market was found for the slack as it came through the first screen and that after that time the making of nut coal ceased and only large screened coal was made; that this was the well known situation in 1871, when the deed to defendants was made.

It appeared from the evidence that the screens in general use after 1869 were the same in size and construction as the large screens used previous to that date. Those used by the defendants, however, were smaller, being only ten to eleven feet long and four feet four inches wide, and the uncontradicted evidence at the trial showed that, on account of their small size and manner of construction, they would not screen coal sufficiently clean for market without unusual care; that as about nine tenths of this coal went to the rolling mills of P. L. Kimberly and his associates, who owned two thirds of this mine, no such care was taken because not required for that purpose, and that large quantities of slack went over and

[Dunham *v.* Haggerty.]

was weighed with the coal and accounted for to the plaintiffs. Some of the witnesses, experienced coal operators, estimated that this dirt would fully equal in quantity any nut coal which might have been made.

Plaintiffs presented, *inter alia*, the following points:—

2. That if the defendants did not screen all the coal mined by them, they are liable to the plaintiffs for all such coal as might or should have been screened, but which was not screened, but was used or taken by them from the lands of the plaintiffs under the contract.

*Answer*—Affirmed. (Fourth assignment of error.)

3. That if the jury believe there are two kinds of screened coal, called lump and nut coal, then the plaintiffs have a right to recover twenty-five cents for each ton of 2,150 pounds of either lump or nut coal mined and removed from their lands under the contract.

*Answer*—Affirmed. (Fifth assignment of error.)

Defendants presented the following points:—

1. That the indenture or instrument of writing upon which suit is brought operated as a sale of all the coal in and under the land described therein to the defendants, Dunham and McCleery. And the grantors not having reserved any part of the coal, the defendants were entitled to mine, remove and appropriate to their own use all of said coal, paying twenty-five cents per ton for screened coal, that being the purchase money or price agreed upon.

*Answer*—This point is affirmed so far as it applies to the sale of all the coal, and so far as it covers all the screened coal; but so far as the point implies that the payment of twenty-five cents per ton for all the coal screened by the defendants was a payment for all coal, the point is denied. (Sixth assignment of error.)

2. That under the terms of the instrument in suit the defendants are required to pay for only such coal as would pass over the customary screen in general use by the operators in block coal mines in the Shenango Valley coal regions, where this mine was situate, at the time the said instrument was executed. *Refused.* (Seventh assignment of error.)

3. That if it was customary for the operators of block coal mines in the Shenango Valley coal regions, at the time the instrument in suit was executed, to use screens making lump coal only, and if the defendants used screens as favorable to the plaintiffs as such customary screens, and if the plaintiffs have received payment at the rate mentioned in the contract for all coal passing over such screens used by the defendants, they cannot recover. *Refused.* (Eighth assignment of error.)

4. That if the plaintiffs received payment at the rate men-

[Dunham v. Haggerty.]

tioned in the contract for a quantity of coal equal to that which would pass over screen in customary use, at the time the instrument in suit was executed, among operators of mines of block coal of the same character in the locality in which this mine was situate, they cannot recover. *Refused.* (Ninth assignment of error.)

5. That the rendering by defendants to plaintiffs of statements from time to time of coal mined, and the giving of receipts therefor in full by plaintiffs, are in the nature of settlements, and the plaintiffs not having attempted to show that they were misled by the defendants, or that there was any concealment, such settlements are conclusive and they cannot recover.

*Answer.* As a general proposition this point would be affirmed. But in the present case, it appearing that the defendants only accounted for the coal actually screened and not for the coal passing through the screen, which may have been merchantable or valuable, it is therefore qualified this far: that the plaintiffs would be entitled to payment for the same, unless in full knowledge of their rights, by their own acts, they have waived their claim to such payment, as evidenced by their receipts from time to time in full payment of royalty. (Tenth assignment of error.)

6. That if there is any uncertainty in the language in the instrument in suit, the defendants having throughout their whole course of dealings with the plaintiffs rendered statements of and made payments for lump coal only, without objections on the part of the plaintiffs, the parties have thereby put a construction on the contract for themselves. The plaintiffs cannot now change that construction and recover for either nut coal or slack. *Answer.* Affirmed, if the jury, under the instructions of the court, believe this to be the fact. (Eleventh assignment of error.)

7. That if, under the contract, the slack was not the property of the defendants, then the plaintiffs cannot recover in this form of action for such slack removed by the defendants. *Refused.* (Twelfth assignment of error.)

8. That if the defendants, under the contract, are liable for nut coal, which would be the coal passing over a screen twelve feet long, six feet wide, and five-eighths of an inch between the bars, and the screen they actually used would yield them as great a return as in the other case, then the plaintiffs have been paid for all the coal to which they are entitled and cannot recover. *Answer.* This point is affirmed if the jury believe, under the evidence, that the plaintiffs were paid for all the merchantable or valuable coal mined by the defendants, or

[Dunham *v.* Haggerty.]

all the coal they were to be paid for. (Thirteenth assignment of error.)

The court charged the jury, *inter alia*, as follows:—It becomes a question in this case whether or not they are liable to account for the other coal. Now we instruct you that the payment for that larger or lump coal was not in itself a payment for all of the coal under that tract of land. . . . . . But if there was other coal, which was of the character of nut coal, and mixed with the slack so as to make it even more valuable, possibly, than the nut coal itself because of a greater quantity, then we instruct you that these defendants would be liable for the payment of the value of that coal, whatever it would be. . . . . And now, right here, lest there might be a mistake made by what has been said by plaintiffs' counsel, we instruct you that that value is not to be gathered from what these defendants may have received for that coal in the market, because mixed with that coal was the labor of these defendants and the expense that they were at in transferring it to the market, and therefore you could in no event exceed the price stipulated, twenty-five cents a ton. And in that you will be governed by another consideration, was all that nut coal and slack, taken together, of the value of lump coal, and should they be allowed even twenty-five cents for that in the gross, as a gross quantity. It would seem to the court that taking the slack and the nut coal mixed, they would not be entitled to as much as twenty-five cents for a gross ton, that being the price which they were to pay for the lump coal, which was unquestionably of a higher value than that mixture of slack and nut, if you find that there was any nut coal. (First assignment of error.) . . . . . If you find that these defendants have obtained an advantage that they have not paid for, it would be your duty, unless explained in another part of our instructions to you, to allow them a fair consideration for that which they have taken from the plaintiffs in this case and for which they did not pay, leaving out of that consideration the worthless slack, because they would not be bound to pay and should not pay for worthless slack that may have been left upon the bank or at the mouth of the chute would occur to the court, but that is a question of fact for the jury under all the evidence and the instructions which we have given you. They ought not to pay for anything which is worthless, only that which is valuable and merchantable, and which they have not paid for according to the terms of their contract, because their contract only specified for the payment of one kind of coal—screened coal. (Second assignment of error.) . . . . . You have in evidence that these defendants from time to time, or every six months at least, made returns

[Dunham v. Haggerty.]

of the coal that they had taken from this land, to the plaintiffs. They had those returns before their eyes and subject to their own inspection. Now did they know all these facts? Did they know that they were receiving payment for coal only of one character? Did they acquiesce in that and admit by their acquiescence that that was all that they were to be paid for? Or did they receive it in mistake, not knowing what their rights were under the contract? If they did, then you have a right to go into consideration of how much they ought 'to be paid in addition to what they have been paid. Some evidence of this is in the fact that the plaintiffs from time to time gave receipts to the defendants in full for the royalty on that coal. They treated it as royalty. If that was a mistake they made, not knowing what their rights were, you may go beyond these receipts and find it so. (Third assignment of error.)

Verdict for plaintiffs for $3,048.41 and judgment thereon. Defendants took this writ, assigning for error the answers to the points and the portions of the charge quoted.

*Samuel Griffith* and *Thomas Tanner* (*Samuel Griffith's Sons* with them), for plaintiffs in error.—The deed in this case passed an absolute estate in the coal to the grantees: Caldwell *v.* Fulton, 7 Casey, 475; Grove *v.* Hodges, 5 P. F. S., 515; Edwards *v.* McClurg, 39 Ohio St., 41. There was no reservation of slack or of any class of coal; the parties knew that it was necessary to screen this coal and so provided. The plaintiffs knew that a certain portion of this coal as it came from the mine would pass through the screens, and neither reserved it nor provided that the grantees should pay for it; nor is it mentioned as a basis upon which to compute the payments. The only basis provided is the screened coal, and *expressio unius est exclusio alterius* applies. This instrument will be strictly construed against the grantors, and not having reserved any of the coal it all passed to the grantees, while the defendants below will not be held for any payments beyond what they have expressedly covenanted for. The instrument at bar throws no light upon the question, since it does not provide how the coal is to be screened or how many or what screens are to be used. Hence after grantees were only bound to use such screens as were in general use in mines of the same kind of coal in that region. If there could be any doubt concerning the proper construction of the instrument at bar, it is disposed of by the construction which these parties have themselves given it by their acts and course of dealing: Coleman *v.* Grubb, 11 Har., 409; Lehigh Coal & Navigation Co. *v.* Harlan, 3 Cas, 429; Paxson's Appeal, 10 Out., 429; Pol-

[Dunham *v.* Haggerty.]

lock on Cont., *392.   Monthly statements and the payment of royalty thereunder are in the nature of settlements, and in the absence of fraud or mistake they are conclusive.   Shilling-. ford *v.* Good, 14 Nor., 25; Batdorf *v.* Albert, 9 P. F. S., 59; Chapman *v.* R. R. Co., 7 Phila., 204; Winchester *v.* Grosvenor, 44 Ill., 425.

*James A. Stranahan* (*Bowser* and *John McClure* with him), for defendants in error.—This contract contemplated that the second parties to it were only to have what coal was marketable, or in other words, they were to pay twenty-five cents per ton for all coal they mined and removed.   The clause in the contract providing that all the coal mined should be weighed and the weight kept in a book shows that in the contemplation of the parties the coal to be paid for was the coal accurately weighed, and this was all coal mined and removed by the second parties.   To avoid the payment of the amount found by the jury, the plaintiffs in error assume two positions.   One is, that under the contract they were not to pay for the nut coal; and the second is, if they were to pay for it they have paid for it, by receipts showing a payment in full, and that by these receipts defendants in error are estopped.   The first position has been before this court before and refused: Buhl *v.* Thompson, 3 Penny., 267; Mercer Mining Co. *v.* McKee, 27 P. F. S., 170.

As to the second position : Any receipts given by the defendants in error, if in full, were given in ignorance of their rights, or they were misled by plaintiffs in error in giving receipts; and plaintiffs in error cannot claim the benefit of the fraud thus practiced by them.   This part of the case was properly submitted to the jury, and under the evidence the jury could not have decided otherwise than they did.

Mr. Justice TRUNKEY delivered the opinion of the court, October 26th, 1885.

By the deed dated October 7th, 1871, the grantors conveyed to the grantees, their heirs and assigns, all the coal and other minerals under the described land, " with the right to construct railroads, underground entries, and all necessary buildings and fixtures to facilitate the mining and removing said coal and other minerals, and to occupy such land as may be necessary for the same, by paying a reasonable rent therefor, as well as for the refuse of said mines."   And Sarah Haggerty, one of the grantors, had the privilege to take, without charge, as much of the mined coal or slack as necessary for the use of herself and family.   The grantees covenanted " to pay twenty-five

[Dunham v. Haggerty.]

cents for each and every ton of 2,150 pounds screened coal so mined by them."

It is apparent that at the time of making the bargain the parties had in view screened coal, refuse and slack, and the consideration for the grant of the coal was a certain sum for each ton of screened coal. The grantees were entitled to the whole for a price to be ascertained in the stipulated mode. They did not agree to pay for slack or refuse. The parties to this action do not differ on one point, namely, that for every ton of coal the defendants were liable to pay for, they were bound to pay twenty-five cents. But the court ruled that the stipulated price did not apply to the entire grant, but only to lump coal; and for nut coal, or nut coal mixed with slack, sold by the defendants, they are bound to pay so much as the same was worth. No argument was made in support of that ruling, for neither party believes it was correct; and we are of opinion it was at variance with the contract. Nor does such ruling seem reconcilable with the plaintiffs' second and third points, which were affirmed. The instruction in those points was, that the defendants were liable for all the coal that should have been screened and was not, which was taken by them under the contract, and that the plaintiffs had a right to recover twenty-five cents for each ton of either lump or nut coal mined or removed from the land. The first, second and sixth assignments of error must be sustained.

The defendants' second point was, "That under the terms of the instrument in suit the defendants are required to pay for only such coal as would pass over the customary screen in general use by the operators in block coal mines in the Shenango valley coal regions, where this mine was situated, at the time said instrument was executed." Answered thus :. "This point is denied under the facts in this case." That was error. The proposition was sound, and the facts were for the jury to determine. Testimony was adduced by both parties tending to show the meaning of "screened coal." The contract embraced the whole of it, whether one or two sorts. One party contends that at the date of the contract, lump coal was the only sort produced in that valley; the other, that both lump and nut were produced and sold. They differ as to what was the usage. If only lump coal was meant, the defendants had no right to use a screen with larger spaces than was customary; and if nut coal was also meant, they could not escape liability to pay for it by omitting the proper screen and disposing of the nut coal with the slack. The parties are presumed to have used the words "screened coal" in the sense in which they were commonly understood in the locality. It follows, also, that the defendants' third point should have been affirmed.

[Dunham *v.* Haggerty.]

We are not convinced that there is error in the instructions complained of in the third, tenth and eleventh assignments. The defendants mined, screened, weighed, and made statements of the weight, and, from time to time, paid for the coal and took receipts in accord with their statements. The plaintiffs were not present when the coal was screened or weighed, and did nothing except to receive the money and execute the receipts. This is not an ordinary case of mutual settlement of accounts, but of a party making a statement of what he has done and paying accordingly. If it be shown that the statements were false, that coal ought to have been screened and weighed which was not, the burden is cast on the party who did the wrong to show that the other knew the real facts when he received the statements and gave the receipts. Unless there was an actual settlement there is no ground for application of the rule, that a settlement is conclusive unless fraud or mistake be shown by clear and satisfactory evidence. It is not presumed that the defendants are guilty of fraud; they made no mistake in stating the weight of the coal they screened, and they paid for that; but if it be true that because of their mistaken claim of right under the contract, they omitted to screen a large quantity of coal that ought to have been screened, how can it be said that the parties intended a settlement and payment for coal that was not screened? Only on proof that the plaintiffs knew of such omission.

It is hardly necessary to note the twelfth assignment. We do not understand that the plaintiffs claim to recover for slack, and it is already said that they are only entitled to recover the balance of the contract price, due for coal that ought to have been screened by the defendants in case the jury find that nut coal was meant to be included.

The chief inquiry as to disputed facts is, whether the parties understood that "screened coal" included nut coal; if they did, the defendants cannot avoid payment for the nut coal by showing that the lump coal was badly screened and contained nut and refuse. They screened the lump to suit themselves, and cannot be permitted to estimate refuse to deduct from the nut. The thirteenth assignment is not sustained.

Judgment reversed, and *venire facias de novo* awarded.