## J. J. GREENHOE ET AL. *v.* JACOB COLLEGE ET AL.

APPEAL BY PLAINTIFFS FROM THE COURT OF COMMON PLEAS OF BEDFORD COUNTY.

Argued May 12, 1891—Decided October 5, 1891.

1. Where, on appeal from a judgment on a verdict, the evidence is not printed in full, or such extracts from it as are agreed to contain all that is pertinent, assignments of error based on the alleged insufficiency of the evidence to carry the questions involved to the jury, will not be considered.

Statement of Facts.

2. Evidence that the bailors of personal property knew that it was seized as the property of the bailee, at the suit of the latter's creditors, but gave no notice of their claim until nearly two years after the sale of it, was sufficient to submit to the jury to raise an estoppel of the bailors in favor of innocent purchasers.

Before PAXSON, C. J., STERRETT, WILLIAMS, McCOLLUM and MITCHELL, JJ.

No. 142 January Term 1891, Sup. Ct.; court below, No. 91 April Term 1887, C. P.

On March 21, 1887, J. J. Greenhoe, and Jacob Greenhoe and Elizabeth Greenhoe, his wife, for the use of said wife, brought trover and conversion against Jacob College, Henry Reinhard and George Reinhard. Issue.

At the trial, on November 28, 1889, it was made to appear,* in brief, that, in 1882, Jacob Greenhoe and his wife Elizabeth lived in Snyder county, where lived also their son, J. J. Greenhoe, until he removed at a later date to Dauphin county; that in September, 1882, Mrs. Greenhoe and her son, on a contract either of conditional sale or bailment, bought a saw-mill and engine from the Geiser Manufacturing Co., for $1,925, payable in instalments; that by their direction the saw-mill, etc., were delivered by the Geiser Co. at Hopewell, Bedford Co., to Jacob Greenhoe, the husband and father, who was insolvent; that the mother and son entered into a contract with the husband and father that the latter should take charge of the saw-mill, operate it, and pay them a certain price per thousand for the lumber made; that Jacob Greenhoe operated the saw-mill at or near Hopewell for two or three years, becoming largely indebted for labor, timber-leave and boarding-bills; that John Manspeaker and John Weist, two of his creditors, issued at-

---

* In the appellants' paper-book was an appendix beginning "Testimony in relation to assignments of error." Then came the testimony of the plaintiffs in part and of the defendants in part, ending with a certificate signed by Mr. Potter for the appellants, as follows: "This is to certify that the above is all the testimony relating to the assignments of error on which this case is taken up." In the paper-book of the appellees, it was urged that the court should dismiss the appeal, for the reason that the appellants had omitted testimony adduced that was relevant and material to the questions raised.

Charge of Court below.

tachments against him under which a seizure was made of the saw-mill, etc.; that the Geiser Co. then made claim to the property, whereupon an interpleader was ordered; that on February 12, 1885, before the issue was tried, the Geiser Co. withdrew its claim, when an order was made that the plaintiffs have leave to proceed, and to sell the property under their judgments obtained; that subsequently, in April, 1885, the property was sold at sheriff's sale to Jacob College, Henry Reinhard and George Reinhard, the defendants in this case; and that on January 11, 1887, a written demand upon the defendants to surrender the property was made by the plaintiffs and refused. This demand contained the clause: " You are hereby notified, as you were notified, at the time of the sheriff's sale, that " the property bought at said sale was the property of the claimants. On the part of the defendants, testimony was introduced from which it was claimed that the plaintiffs had notice of the seizure of the property under the attachment proceedings; that they were represented at the time of the interpleader by Mr. J. B. Cessna, the same counsel representing the Geiser company. The defendants testified that no notice was given at the time of the sheriff's sale that the property sold to them belonged to the plaintiffs. J. J. Greenhoe, one of the plaintiffs, testified that in employing counsel he was acting for himself and his mother, and it was stated in the paper-books that his mother was present on the trial.

The case having closed on the testimony, the court, BAER, P. J., charged the jury in part as follows :

Counsel for the plaintiffs, ask us to instruct you as follows :

3. That the plaintiffs could not be affected by the interpleader proceedings, they not having been parties thereto nor being represented therein.

Answer: This is affirmed; they could not be affected by that.

4. That the rights of the plaintiffs cannot be prejudiced or affected by any knowledge which J. B. Cessna, Esq., had of said proceedings, the defendants having failed to show affirmatively that he was their agent or attorney in said proceedings or during their pendency.

Answer: We say to you that the plaintiffs cannot be affected by any knowledge of J. B. Cessna, unless the defendants sat-

isfy you by evide ce in the case that Mr. Cessna was the attorney of the plaintiffs, and obtained his knowledge as counsel or attorney for them, after he had been employed by them or either of them.[1]

We are asked to charge you by the defendants:

4. That if the property in controversy was put into the possession of Jacob Greenhoe by the plaintiffs, for the purpose of enabling him to make a living, and he was permitted to come into this county of Bedford, a great distance from the home of the plaintiffs, and they permitted him to use the mill and obtain credit thereon, and that by reason thereof debts were contracted by said Jacob Greenhoe upon the strength of his ownership of said mill, and the same was seized and sold by the sheriff and no claim was made for the property by the plaintiffs to the defendants, then they are estopped from setting up any claim thereto in this action.

Answer: This point is affirmed, if the jury find that the plaintiffs had knowledge that Jacob Greenhoe was obtaining credit on the strength of his alleging ownership, or, that they had knowledge that it had been seized by the sheriff and they neglected to notify the sheriff of their claim, and failed to give notice to bidders, after having had knowledge that it would be sold.[2]

5. That if, as alleged by the plaintiffs, they employed J. B. Cessna to give notice of their claim to parties interested, after the seizure and at the sale thereof, and if they knew that said property was seized and about to be sold, and the said Cessna informed them of this fact, and of further fact that he was about to leave and did leave the county before the sale thereof, and in consequence no notice was given to the defendants, and the plaintiffs neglected for any reason to notify them of their claim, and in consequence thereof the property was sold, they are estopped from setting up any claim to the same in this action.

Answer: If the jury find the facts to be as stated in this point, and that the plaintiffs, after such alleged knowledge of seizure, had directed Cessna to give notice at the sale, and no notice was given, that time enough intervened before the time of the sale to have enabled them, if diligent, to have given notice, then they are estopped.[3]

6. That if the jury believe that the plaintiffs obtained and

Charge of Court below.

held the property in controversy by virtue of the lease of September 1, 1882, then the rights of the parties defendant must be determined according to the rights of the Geiser Manufacturing Co. and the plaintiffs, as they existed in relation to each other at the time of the seizure and sale; and if the right of action was in the said Geiser Co., and not in the plaintiffs, at the time of said seizure and sale, and they abandoned their right and claim, then the verdict must be for the defendants.

Answer: This is refused. . . . .

The evidence, applied under the law as already given to you by the court, and as will yet be given to you, if believed, shows:

1. That Dr. J. J. Greenhoe and his mother, Elizabeth Greenhoe, either absolutely purchased a steam mill from the Geiser Manufacturing Co. or they became bailees of the same under a contract giving them the use thereof. And in either event, on all the evidence, they thereby, and especially after the discharge of the interpleader rule, by withdrawal of claim by the Geiser Manufacturing Company, became such owners as would enable them to bring this suit. We do not, however, say that it gave them such ownership as would enable them to recover, but leave the question with you.

2. If the evidence is believed, then there was a sheriff's sale on April 10, 1885, by Sheriff Diehl, on a levy previously made by his predecessor after a claim made to that predecessor by the Geiser Manufacturing Co., in virtue of which he came into court and procured an order that the plaintiffs in the writ of execution and the complainant, the Geiser Manufacturing Co., do interplead, so that the right of ownership should be determined before he be required to sell the property levied on. . . . .

The defendants in the present suit allege and called witnesses to show, that J. B. Cessna was employed as attorney for the present plaintiffs some time after the seizure and before the sale, and that he had knowledge of the seizure and of the purpose of the sheriff to sell, and that he had been requested by the plaintiffs to give notice at any sale of the property, that the plaintiffs, Dr. J. J. Greenhoe and Mrs. Elizabeth Greenhoe, owned the mill, and that Jacob Greenhoe, defendant in the execution, had no title, but was only a lessee. . . . .

[If you find that Mr. Cessna was counsel for them then, and that he had such knowledge obtained after he became counsel,

Arguments.

then, whether he informed his clients or did not inform them, they are affected by the knowledge which he had of the then coming sale; and it became and was their duty, if you find they had the opportunity, to give notice to the sheriff and to the bidders at that sale, either directly or through the sheriff, that they were the owners of said property, under all the circumstances in the case. And if they failed or neglected to make known their claim, and thereby induced the sheriff and the bidders to believe that there was no other claimant than the person who had been ruled to interplead and who abandoned his claim in the proceedings in court, then they by negligence permitted the sale to go on, and permitted innocent purchasers to become bidders and buyers, and they are now, as against the sheriff and against such purchasers, estopped from setting up claim to the property.] [4] . . . .

—The jury returned a verdict in favor of the defendants. A rule for a new trial having been discharged and judgment entered, the plaintiffs took this appeal and assigned for error:

1. The answer to the plaintiffs' point.[1]

2, 3. The answers to the defendants' points.[2] [3]

4. The portion of the charge embraced in [ ] [4]

*Mr. A. W. Potter* (with him *Mr. T. J. Smith, Mr. S. L. Russell* and *Mr. J. H. Longenecker*), for the appellants.

As to the first assignment, counsel cited: Commonwealth v. Moltz, 10 Pa. 527; Hill v. Epley, 31 Pa. 331; Columbia Bridge Co. v. Kline, 4 Clark 39. As to the fourth assignment: Freeman v. Caldwell, 10 W. 9; Freeman v. Apple, 99 Pa. 261; Piper v. Martin, 8 Pa. 206; Bigelow on Estoppel, 437; Wright's App., 99 Pa. 425; Helser v. McGrath, 52 Pa. 531; Feig v. Meyers, 102 Pa. 10; Putnam v. Tyler, 117 Pa. 570.

*Mr. J. M. Reynolds,* for the appellees.

Counsel cited: Farmers' Bank v. McKee, 2 Pa. 321; Lehigh Co. v. Field, 8 W. & S. 240; Purdy v. McCullough, 3 Pa. 467; Fleming v. Bevan, 2 Pa. 408; Morgan v. Negley, 3 Pittsb. 40; Castor v. McShaffery, 48 Pa. 437; Creps v. Dunham, 69 Pa. 456; Hubbard v. Tenbrook, 124 Pa. 291; Callender v. Robinson, 96 Pa. 454; 7 Am. & Eng. Encyc. of Law, 23.

Opinion of the Court.

OPINION, MR. JUSTICE McCOLLUM:

In the written demand for the surrender of the property, it was stated that at the time of the sale of it on process against Jacob Greenhoe the appellees were notified that the appellants were the owners of it. Now the appellants contend that they did not know of the sale of the property until after the appellees purchased it. Three of the four specifications of error filed by the appellants are founded on their alleged want of knowledge of the sale in time to protect purchasers by notice of their title. The court below was of opinion, and so charged the jury, that if the appellants knew of the seizure of the property, and employed Cessna to represent them in the attachment and interpleader proceedings, they were chargeable with the knowledge he acquired in the course of his employment. The appellants, whilst conceding the correctness of this instruction as an abstract legal proposition, contend that there was not sufficient evidence in the case to authorize it. They admit they have not printed all the evidence, but they claim that they have printed all of it that is applicable to their specifications. This claim is denied by the appellees, who insist that material testimony affecting questions raised by the specifications has been omitted. A dispute is thus presented which we have no means of solving satisfactorily, and which we are not in the present state of this record required to decide. We are certainly not bound to accept the disputed assertion of the appellants that the extracts which they have printed from the testimony contain all that is pertinent to the questions under consideration. It is presumed on error that no fact was submitted to the jury without evidence to sustain it, unless the contrary be clearly shown: Gifford v. Gifford, 27 Pa. 202. Where a writ of error is taken upon a judgment on a verdict, the paper-book of plaintiff in error should contain the whole of the evidence, properly certified; and where it contains only disputed and uncertified extracts from the testimony, the judgment will be affirmed: Oakland Ry. Co. v. Thomas, 1 Penny. 435. When, therefore, all the specifications are grounded on the alleged sufficiency or insufficiency of the testimony, to carry the case, or certain questions included in it, to the jury, the appellant should print all the evidence, duly certified, or in lieu thereof extracts from it which the parties mutually agree contain all that is pertinent to the issues in error.

We might affirm the judgment in this case on the ground that the appellants have failed to comply with this reasonable and necessary rule, but we have examined and considered the evidence they have printed, and we think it justified the court in referring to the jury the questions included in the specifications. It shows that the appellants knew that the property was seized by the creditors of Jacob Greenhoe; that they were in correspondence with counsel concerning it before notice to the sheriff that the Geiser Manufacturing Co. claimed the property; and that the notice was probably the result of the correspondence, because it promptly followed it, and was given by counsel who represented both them and the company in the effort to defeat the attaching creditors. On this notice the sheriff applied for and obtained a rule on the claimant to interplead, and on the twelfth of February, 1885, the company withdrew its claim to the property, and it was ordered that the attaching creditors, who had in the meantime obtained judgments, proceed to sell it. The appellants did not give any notice of their claim until nearly two years after the sale, and their principal contention now is that Mrs. Greenhoe was in utter ignorance of these proceedings, while the son and husband were familiar with them from their inception. This alleged ignorance is the rock on which they rest their claim. But it appears that she was living with her husband when the proceedings were commenced and in progress, and her son testified that in employing counsel to rescue the property from the grasp of his father's creditors he represented himself and his mother, and his authority to so act was not disputed by her. A jury might well accept this sworn and uncontradicted statement of the son, in the presence of his mother, as true.

The appellants allowed the insolvent husband and father to receive the property directly from the manufacturer, and to go with it, as the apparent owner, into a distant county " to make his living." They knew the business in which he was to engage could not be prosecuted without money or credit; that he had no money; and that he must obtain credit, if at all, in the belief that he was the owner of the property in his possession. The credit was obtained, the debts were not paid, and the confiding creditors seized the property with the knowledge of the appellants, who made no claim to it, but allowed it to

be sold to innocent purchasers in satisfaction of honest debts contracted on the faith of it. It would seem from the conduct of the appellants that when the Geiser Manufacturing Co. withdrew its claim, they had no intention of asserting title to the property, but if they entertained a purpose to do so it was bad faith to the officer, attaching creditors, and purchasers to conceal it. Under the circumstances, it was their duty to announce their claim or abandon it. We think they are estopped by their conduct from claiming the property in dispute, and we dismiss the specifications of error.

Judgment affirmed.