# Woods *versus* Wilson.

*Notice, actual and constructive.—Equitable Estoppel.*

1. A., one of the sons of an original settler who died holding a tract of land by settlement-right, claiming to have acquired the interest of the other heirs, procured a warrant, a survey, and patent, in his own name, for the whole tract, and sold it to B., who subsequently sold it to others. Nearly twenty years after the date of the patent, E., another son of the original settler, brought ejectment against three of B.'s vendees, for his undivided interest in the land: *Held*, that the patent of itself would not protect the defendants against the plaintiff's prior title, nor supply notice of it.

2. But as it appeared that the plaintiff had lived, for nearly twenty years, near the land, and had made no claim for his share of it, nor given any notice of his title, though aware that others were making valuable improvements upon it, on the faith of their titles, he was held to be estopped, by his silence and failure to give notice, from asserting title in himself, as against innocent purchasers ignorant of his title, and without notice.

3. Silence will postpone a title, where it misleads, and thus becomes a fraud, but it will not postpone, where the party seeking the postponement on the ground of silence, is himself aware of the title; nor where it results from ignorance on the part of the owner; nor where, with knowledge of his title, he is ignorant that others are making improvements in ignorance of it.

ERROR to the Common Pleas of *Beaver county*.

This was an action of ejectment brought by Elisha Woods

[Woods *v.* Wilson.]

against Joseph Wilson, John Wilson, and George Hicks, to recover the undivided one-seventh part of a tract of land in Moon township, containing about 200 acres.

The whole tract was originally settled on by Robert Woods. After his death, John Woods, one of his sons, as early as 1833, claimed exclusive possession of the land, under a purchase from the other heirs of his father; occupied it through tenants, and took out a patent for it, April 1st 1856, when he sold it to Pinney, who made several sales of portions of it to others, with clauses of general warranty, who, subsequently, sold to others, with warranty. The Wilsons were tenants of subsequent purchasers, but Hicks claimed in his own right as a purchaser from Pinney. The plaintiff claimed as heir of Robert Woods. It was proved on the trial, that he was born in 1814, attained his age in 1835, and had lived near the land from 1837. It was also in evidence that he had admitted a sale of his interest, but it was not proved that he had ever claimed title to the land.

The defence rested on two grounds:—

I. The statute of limitation;

II. Equitable estoppel.

Under the charge of the court (AGNEW, P. J.), portions of which were excepted to by the plaintiff, the jury found a verdict in favour of defendants, and judgment being entered thereon, the plaintiff sued out this writ, and assigned for error that portion of the charge which related to the doctrines of the constructive notice and equitable estoppel, which will be found in the opinion of this court.

*Thomas Cunningham* and *Wm. B. Clarke,* for plaintiff, objected to the distinction made by the court below, between that notice of the plaintiff's title as one of the heirs of Robert Woods, Sr., which is presumed to exist, and that, required to affect the defendants, in reference to an estoppel, contending that, as regards consequences, actual and implied notices are the same: Sheldon *v.* Cox, Amb. 626; Sug. on Vend. 730; Hill on Trustees 744; Cromwell *v.* Arrott, 1 S. & R. 182.

Whatever puts a party upon inquiry is notice: Lodge *v.* Simonton, 2 Penn. Rep. 439; Barnes *v.* McClinton, 3 Penn. Rep. 70; Sergeant *v.* Ingersoll, 3 Harris 348; Jaques *v.* Weeks, 7 Watts 261; Hill *v.* Simson, 7 Vesey, Jr. 170; Story on Eq. Juris. § 400; 2 Fonbl. Eq. 151; Tardy *v.* Morgan, 3 McLean 358; McGehee *v.* Gindrat, 20 Ala. Rep. 95; Hinde *v.* Vatier, 1 McLean 110; Hill *v.* Epley, 7 Casey 331. The principle as to estoppels was not properly laid down, but was assumed without being warranted by the facts. That the rule recognised in Commonwealth *v.* Moltz, 10 Barr 557, and Eldred *v.* Harzlett's Administrator, 9 Casey 316, was not adhered to. Mere silence

[Woods v. Wilson.]

is not enough: Folk v. Beidelman, 6 Watts 339; Bell v. Ohio and Pennsylvania Railroad Company, 1 Grant's Cases 111; Beaupland v. McKean, 4 Casey 124; Robinson v. Justice, 2 Penn. Rep. 19; Keeler v. Vantuyle, 6 Barr 253; Crest v. Jack, 3 Watts 240; Hepburn v. Dowell, 17 S. & R. 283; Knouff v. Thompson, 4 Harris 361; 1 Gr. Ev. 197; Hill on Trustees 751.

Lewis Taylor and R. P. Roberts, for defendants, insisted that the distinction between actual and constructive notice, taken by the court below, was correct, and relied on the reasoning of the court, and on the authorities cited in the charge, to wit: Gonzalus v. Hoover, 6 S. & R. 125; Carr v. Wallace, 7 Watts 394; Starr v. Bradford, 2 Penn. Rep. 384; Brentlinger v. Hutchinson, 1 Watts 46; McDowell v. Mulhollan, 5 Watts 173; Jacob v. Figard, 1 Casey 45.

The material facts of the case, as also that portion of the charge objected to by the plaintiff in error, are fully given in the opinion of the court.

The opinion of the court was delivered, January 31st 1861, by
THOMPSON, J.—All the assignments of error in this record present but one point, and that relates to the instructions of the learned judge on the subject of equitable estoppel relied on by the defendants in error, as precluding a recovery against them. It is true this element in the case, considered in the light of the acts of both parties, was announced in answer to points on both sides; still the point is single, and regards the question of estoppel respectively insisted on by the parties. The facts of the case were briefly these.

William Wood, the father of the plaintiff, was the original settler on the land, for the undivided seventh of which, this suit was brought. He commenced his settlement in 1796, and by himself and tenants kept possession until 1828, when he died on the land, leaving a widow and eight children. They continued the occupancy for a year or so until the mother died; after which, the family scattered. William, the son, occupied the land for a year or more. It then came into John Wood's possession, also a son. He occupied it by tenants, and was off and on himself for several years, when, as he alleged, he at last procured transfers from the heirs, and, on the 1st of January 1836, made application reciting these transfers for a warrant in his own name. The warrant issued, was surveyed and returned, and a patent issued to him for 290 acres and 63 perches of land, bearing date the 1st April 1836, he paying the purchase-money at 56 shillings per hundred acres, with interest and office fees.

On the 17th of November 1836, he conveyed the tract to Ovid Pinney, and under him the defendants claim;—the Wilsons as

tenants under purchasers, and Hicks in his own right as a purchaser from Pinney.

Elisha Wood the plaintiff is a brother of John. After the death of his mother, he went to a trade, a distance of some ten miles from the land. He became of age in 1835. In 1837 he returned to the neighbourhood of the land, and became a resident about that time of the village of Freedom; got married soon after, and has lived in the neighbourhood ever since. On the 26th November 1856, he caused this suit to be brought.

Under this state of facts and others to be mentioned, the defendants claimed that Elisha, by his silence and failure to give any notice of title, was estopped from asserting title as against them, being innocent purchasers without notice.

The court was of opinion, and in substance charged that, notwithstanding Pinney and his vendees were innocent purchasers, there being nothing on the face of the patent to give them notice of any other title, or to put them on inquiry, yet that the patent would not protect them against the plaintiff's title; that a patent is but *primâ facie* title against prior claimants. There are many authorities to prove this; and that a purchaser from the patentee is in this respect in no better position than the patentee: Lewis *v.* Bradford, 10 Watts 76; Duer *v.* Boyd, 1 S. & R. 203; Urket *v.* Coryell, 5 W. & S. 60; Gregg *v.* Patterson, 197.

The court, however, properly held that, notwithstanding the want of conclusiveness of the patent against the prior title of the plaintiff, still it was not notice of it. And hence, if the defendants and those under whom they claim had no notice of his title— were ignorant of it altogether—there being no notice on the face of the patent, and nothing to put them on inquiry, they were not to be affected with notice simply from its inconclusiveness. The patent would not supply notice.

It is difficult to understand what notice the patent would afford to a purchaser. It was to John Wood, without indicating that it was in trust for any one. So was the warrant: and if the purchaser had gone back to the application, it would not have aided him, for it recited a transfer from the heirs to John Wood of all their estate in the settlement right of their father. The fact that the transfer of Elisha was not on record, was not notice that it did not exist; for it was seldom that deeds poll to enable an applicant to procure a warrant were ever either recorded or filed. Inquiry would stop here, and yet nothing indicating defect of title would be found, and hence no notice. It would not be necessary to search for the heirs and inquire of them one by one, if they had transferred to their brother. Certainly to exclude the idea of notice, the inquiry thus made would be sufficient. The title affording no notice, the purchasers from the patentee would not be affected with notice so as to preclude

[Woods v. Wilson.]

them from claiming an estoppel for want of it on part of the plaintiff, if other facts in the case would warrant the application of the rule.

Standing as purchasers without notice, the learned judge further charged in substance, that "if Ovid Pinney, who bought the land from John Wood under the patent in evidence, was ignorant in fact of the title of the plaintiff, and had no good reason to believe that his title was imperfect; went into possession of the lands; held it peaceably without interruption from the plaintiff; sold at greatly advanced prices, binding himself in a general warranty at those prices; and he and those claiming under him, from time to time, added to and made valuable improvements upon the lands by clearing, fencing, and building, thereby largely enhancing its value, and if the plaintiff was aware of his own title, knew of the purchase and possession of Pinney, and those to whom he sold, and of the improvements made by him and them, and lay by silently for many years (perhaps the jury may believe down to the bringing of this suit), Pinney and some of them claiming under him, in the mean time having involved themselves in sales and warranties, and the land having greatly increased in value, the plaintiff would be estopped by this conduct from recovering in this case."

The counsel for the plaintiff in error do not complain of want of evidence of these facts to be submitted to the jury. There was evidence that he was aware of his own title, for about or near the time of his arriving at age, he spoke of having sold it to his brother John. And that he knew of the improvements on the premises, might be presumed or found, from the fact of his long residence near the land. So of conveyances and warranties; the deeds were on record. There was evidence, therefore, to justify the submission to the jury of the facts, and their verdict on the facts was for the defendants.

The defendants, being purchasers without notice, and there being no defect on the face of their title, or other circumstances to give notice of title in Elisha, nor anything to put them on inquiry, the law devolved upon him the duty of asserting his title, or in default, subjecting it to be postponed, when he attempted to assert it. This, it must be understood, is predicated of a case, wherein the defendants themselves were ignorant of the title. For if they had been aware of it, or had notice of it, either actually or constructively, nothing short of twenty-one years' actual, adverse possession, would have sufficed to defeat his right of recovery.

But while it is certainly true that mere silence will not postpone a title, it is not universally true. It is true when a party who is himself aware of a title, seeks to postpone it on the ground of silence. It is likewise true, when the silence results

[Woods *v.* Wilson.]

from ignorance on part of the owner. So where a party is aware of his own right, but ignorant that others are expending money and making improvements in ignorance of his title; but it is *not* true, when silence misleads, and thus becomes a fraud. When one lies by for a series of years, with no title on record; where it is a secret trust, and at the same time knows that others are spending money and making valuable improvements on the faith of titles, all regular on their face, without notice or anything to put them on inquiry in regard to adverse claims; there the law declares such silence a fraud, and will postpone the title of such an owner under such circumstances. There are many cases in our books to this effect: Wallace *v.* Carr, 7 Watts 394; Robinson *v.* Justice, 2 Penn. 19; Beaupland *v.* McKean, 4 Casey 124; Keeler *v.* Van Tuyle, 6 Barr 253; Knouff *v.* Thompson, 4 Harris 357; Hill *v.* Epley, 7 Casey 331.

The law of estoppel, it has been said, suppresses truth whenever it operates. This is so, but by this means the ends of justice are frequently subserved. It restrains a party from claiming in opposition to his acts and declarations, when to do so any injury would result to the innocent and blameless, which the law could not redress. It operates, however, only in favour of those who, after the exercise of diligence, are still ignorant of an opposing title, and against those who, aware of their own title and knowing it to be secret, are silent. When both parties are aware of their respective rights, it has no place in law or equity. We think the doctrine was properly administered by the learned judge of the court below, and therefore there is no error in his application of it to the case in hand.

We do not think that the testimony of Dr. Cunningham proved notice of the plaintiff's title, nor was there any error in the manner in which the learned judge treated it.

As there is no error in the record,

The judgment is affirmed.