# Brandmeier *v.* Pond Creek Coal Company, Appellant.

*Lease—Coal lease—Dispute of title—Husband and wife—Estoppel—Evidence.*

Where a married woman died seized of an estate in land underlaid with coal, leaving to survive her a husband and children, and the husband after the death of his wife executes a lease of the coal as if it were his own, but the lessee before making improvements examines the records and finds the true state of title, the lessee cannot, after having made improvements, claim that the children were estopped from denying the lease, because with constructive notice of the record, they stood by and let the improvements be made; and this is especially so, where the evidence shows that the children acted on the belief that their mother had left a will by which the land in question had been devised to their father.

*Husband and wife—Curtesy—Seisin.*

In this state, while actual seisin of the wife during coverture is not necessary to entitle the husband to claim by curtesy, the right to recover immediate possession of the estate during coverture must exist, and the husband cannot be tenant by the curtesy of his wife's estate in reversion or remainder expectant on an estate of freehold unless the estate is ended during coverture.

Argued April 15, 1907. Appeal, No. 170, Jan. T., 1906, by defendant, from judgment of C. P. Luzerne Co., Dec. T., 1903, No. 409, on verdict for plaintiff in case of Frederick Brandmeier et al. v. Pond Creek Coal Company. Before MITCHELL, C. J., BROWN, MESTREZAT, POTTER and ELKIN, JJ. Affirmed.

Ejectment for coal in Foster township. Before FERRIS, J.

The opinion of the Supreme Court states the facts.

The court gave binding instructions for plaintiffs.

The jury returned a verdict " in favor of the plaintiffs, and against the defendant for an undivided one-half interest of the premises described in the writ, and apportion said half as follows: an undivided one-fourth to Frederick Brandmeier and an undivided one-fourth to Mary Mills, subject to any interest or estate, if any, of George Fernau."

*Error assigned* was in giving binding instructions for plaintiffs and in entering judgment on the verdict.

20 BRANDMEIER *v.* POND CREEK COAL CO., Appellant.

*J. Q. Creveling*, with him *D. L. Rhone*, for appellants.

*Edmund G. Butler*, with him *Daniel Kline*, for appellees.

OPINION BY MR. JUSTICE BROWN, June 25, 1907:

Barbara Brandmeier was the owner of the forty acres of land in dispute, by deed from David Dean, dated May 10, 1862, and duly recorded. She died intestate June 16, 1893, seized of this land, and left surviving her a husband, Ludwig Brandmeier, and five children, Frederick, Mary, John, Susan and Elizabeth. Elizabeth was married to George Fernau, and died since her mother's death and before that of her father, intestate, childless, and leaving her husband to survive her. Ludwig Brandmeier remarried, and, on January 15, 1896, executed a lease for twenty-one years of all the coal under the forty acre tract that belonged to his wife, and a sixty acre tract adjoining, which belonged to him, to A. Judson Lathrope et al., the predecessors in title of the Pond Creek Coal Company, the present appellant. Ludwig Brandmeier died April 10, 1903. At the time he executed the lease to Lathrope et al., the records showed that the title to the forty acre tract was in Barbara Brandmeier, and failed to show any conveyance or devise of the property by her to anyone. Shortly after the lease was made, and before any improvements were placed upon the premises, Lathrope, one of the lessees had acquired actual knowledge that the title was in Mrs. Brandmeier, and, with such knowledge, the subsequent operations were started and carried on. This statement, taken from the opinion over-ruling the motion for a new trial, is the subject of one of the unseemly criticisms of the trial judge by counsel for the appellant. This criticism is not only unseemly, but utterly inexcusable, for Lathrope testified that shortly after the lease was made he learned from the deed to Mrs. Brandmeier itself that the property was hers. His testimony as to this was as follows: "Q. And at the time you discovered this you had not opened any mine? A. No, sir: we had done a lot of proving. Q. You had not built a breaker? A. No, sir. Q. You had not made the improvements? A. No, sir."

Frederick Brandmeier and Mary Mills, the appellees, were affected with constructive notice of the recorded title in their

mother, but they had reason to believe she had left a will devising it to their father. This clearly appears from the testimony. Upon obtaining actual knowledge that the property belonged to them, the appellees, with promptness, consulted counsel, gave notice of their claim to the appellant and also to the executor and trustee under their father's will, forbidding him to accept, as trustee, any royalties for coal mined from the forty acre tract, and from the testimony it seems that no such royalties were knowingly received by him. Before this suit was brought two of the four surviving children of Barbara Brandmeier, John and Susan, formally ratified the lease made by their father, with the same effect as if they had been parties to it.

One of the defenses made by the appellant is that the appellees are estopped by their conduct from contesting the coal lease made by their father of the forty acre tract owned by their mother. Their conduct is alleged to have been active assistance in opening and operating the mine and other encouragement by them which misled the appellant and its predecessors in title to their great injury. As to this defense, in the opinion overruling the motion for a new trial, it is said: "Even though the fact of Mary Mills' coverture, be disregarded, there was no proof of any conduct, whether of act, word or silence, on the part of the plaintiffs or either of them, by which the defendant or its predecessors were misled to their injury. Both parties had access to the public records, had equal opportunity to know what they contained, and were equally affected with constructive notice that the title to the forty acre tract was in Barbara and not in Ludwig Brandmeier. The failure of the children to notify the defendant or its predecessors of what they were, in law, presumed to know, and what, in fact, they had an equal opportunity with the plaintiffs to ascertain, was not the failure to perform a duty, was not such silence as would amount to fraud and raise an estoppel. Moreover, the testimony shows that it was common talk in the family that Barbara Brandmeier had devised the land to her husband and that the children so believed. This fact, if it be a fact, is comparatively unimportant, however, being merely a cumulative circumstance to rebut an inference of fraudulent silence which could not be properly drawn in

any event from the other evidence in the case. Nor is there any proof of positive misleading acts on the part of either plaintiff, which were relied upon by the defendant or those under whom they claim, and by which they were induced to change their position for the worse." . Our examination of the testimony has led us to the same conclusion and to a further one that the appellant cannot raise the question of estoppel arising from the conduct of the appellees during the lifetime of their father. Though they had constructive notice that the title to the land was in their mother and may have actually known this, they did not have actual knowledge until after their father's death that it belonged to them and their brother and sister, for from the talk in the family they believed their mother had willed it to their father. But this was not so with Lathrope, one of the original lessees, through whom the appellant claims title. Shortly after the lease was executed he got into his hands—for he so testifies—the deed to Barbara Brand- meier, and then learned that the property belonged to her. He knew she was dead, but, without making any further in- quiry from her children, or anyone else, as to the right of her surviving husband to make the lease, he and his associates, not having up to that time opened a mine or made any improve- ments, proceeded to do so, and we are now asked to say that, though the appellant and its predecessors in title had full knowledge that Ludwig Brandmeier could not execute a lease that would affect the rights of his wife's children in the prop- erty, two of them, the appellees, are estopped by their alleged conduct during their father's lifetime. The doctrine of es- toppel is not in the case. Under the undisputed facts the lessees could have had no mistaken opinion about their rights under the lease of the forty acre tract before they began oper- ations on it, but, on the contrary, knew exactly what they had acquired from the tenant by curtesy. Their exact knowledge was superior to that of the appellees, but if the real truth had been known to both, or if their means of knowledge had been equal, there would be no estoppel: Knouff v. Thompson, 16 Pa. 357; Hill et al. v. Epley et al., 31 Pa. 331; Woods v. Wil- son, 37 Pa. 379; Bright v. Allen, 203 Pa. 394.

Another position assumed by the appellant is that the lease from Ludwig Brandmeier contains a warrant for quiet enjoy-

ment, and the appellees, having taken assets under his will, are bound by his covenant. The lease contains no express warranty, and the court below was of opinion that there was no implied one under the act of May 28, 1715, 1 Sm. L. 94; Stewart's Purdon, 1172. Whether there was an implied warranty we need not decide, for, even if there was, there is nothing in the testimony to show that the appellees ever received assets from their father's estate, or made any election to receive the same that commits them to the lease. On July 18, 1903, a little more than three months from his death, the appellant had notice that the heirs of Barbara Brandmeier claimed the forty acre tract. W. G. Thomas, its president, so testifies. On the 31st of the same month the first payment for royalties was made to the executor of Ludwig Brandmeier. He was called as a witness by the appellant and testified that when the check was given him for royalties, he said he would not accept royalty for any coal mined from the forty acre tract, and was assured that the check was for coal mined from the sixty acre tract. He further testified that he had not paid anything to the appellees from their father's estate. In view of this there is no merit in the second defense.

By direction of the court the verdict rendered in favor of the plaintiffs was for an undivided fourth of the land to each, subject to any interest or estate of George Fernau. Elizabeth, the wife of George Fernau, died before her father, and her husband acquired no title as tenant by the curtesy in her interest in the land. Under the English law, to entitle the husband to his curtesy the wife must have been seized in fee and in deed, and not merely in law of the state of inheritance, and, if there was an outstanding title for life, the husband could not be tenant by the curtesy of his wife's estate in reversion or remainder, unless the particular estate ended during coverture. And it is still the general rule of law that there must be an entry during coverture to enable the husband to claim tenancy by the curtesy: 4 Kent, 29 ; Mercer's Lessee v. Selden, 42 U. S. 37. In this state, while actual seisin of the wife during coverture is not necessary to entitle the husband to claim by curtesy, the right to recover immediate possession of the estate during coverture must exist, and the husband cannot be tenant by the curtesy of his wife's estate

in reversion or remainder expectant on an estate of freehold unless the estate is ended during coverture: Chew v. Commissioners of Southwark, 5 Rawle, 160; Hitner v. Ege, 23 Pa. 305; Buchanan v. Duncan, 40 Pa. 82; Williams v. Baker and Wife, 71 Pa. 476. As George Fernau acquired no right as tenant by the curtesy, so much of the verdict as recognizes it is to be treated as surplusage, and upon return of the record judgment is directed to be entered generally for the plaintiffs.