## Groner et al. v. Keith

*M. J. Goodman* and *Russell C. Mauch,* for plaintiffs.
*Francis H. S. Ede, Asher Seip* and *A. Albert Gross,* for defendant.

STEWART, P. J., May 7, 1934.—These were two motions, one to continue a preliminary injunction and the other to dissolve it. For convenience, we refer to opinions reported in connection with the long-drawn-out litigation concerning the land in dispute, as follows: Opinion handed down April 9, 1928, in Keith's Petition, 21 Northamp. 282, which was a rule upon John Lewis Groner to bring suit in an ejectment; Keith's Petition (2), 21 Northamp. 286; Broad v. Groner, 23 Northamp. 182, opinion handed down November 9, 1931; Keith v. Groner, 23 Northamp. 228, opinion handed down January 11, 1932. The bill sets forth that John Lewis Groner, uncle of John J. Groner, was the reputed owner of a tract of land; that on May 1, 1931, John Lewis Groner made a lease with an agreement of purchase of a part of the tract of land, to John J. Groner; that it was agreed that any improvements made by John J. Groner were to be his property if he bought the premises, otherwise they were to become the property of John Lewis Groner; that John J. Groner took possession of the property, improved the same, erected a large frame building, and spent approximately $5,000 in making the improvements; that the defendants knew that John J. Groner was making the improvements; that they made no claim to have title to the said tract of land; and that they stood by and misled John J. Groner into believing that his uncle was the owner of the premises; that afterwards, on November 16, 1931, the defendants herein instituted an action of ejectment against John Lewis Groner, which terminated in a judgment for plaintiffs, Edward J. Keith and Theresa G. Keith, his wife, for the premises sued for and for 6 cents damages; that John J. Groner is the owner of the said building, and that Jacob Raesley is his sublessee. They averred that if defendants herein recovered possession of the land and prevented John J. Groner from removing his building he would suffer irreparable loss and injury. Their prayer was that the defendants be restrained from selling the land; that they be restrained from taking possession of the aforesaid building, and from interfering with the

right of the said Jacob Raesley to conduct his business in the said building; that they be restrained from preventing the removal of the said building; and that the defendants be directed to reimburse the plaintiff, John J. Groner, for all sums of money expended by him in erecting the building, and for the cost of removing the same.

It appeared that in the suit above referred to an appeal was taken from this court to the Supreme Court, and that on January 29, 1934, judgment of non pros. was entered by the Supreme Court in that suit. That suit was a summons in ejectment, and was entitled Edward J. Keith and Theresa G. Keith, his wife, v. John Lewis Groner. The return of the sheriff shows that John Lewis Groner was personally served, and the return proceeds to set forth as follows: "And finding John J. Groner to be the only person in possession of the within described premises situate in the Township of Plainfield, county and State aforesaid, I served said John J. Groner, by handing him a true and attested copy of the within writ on said premises and making known unto him the contents thereof." As a matter of fact, an examination of the record in the ejectment case discloses that, outside of the sheriff's return, the suit was proceeded against John Lewis Groner alone. John J. Groner, although he attended the entire trial of the ejectment suit, and although he was summoned by the sheriff, took no part in the proceedings, and his name was not added by the prothonotary as a party to the record. The motion to dissolve was based on the following reasons:

"1. Both the present plaintiffs, John J. Groner and Jacob Raesley, are in possession of the premises under John Lewis Groner, and their rights cannot rise higher than John Lewis Groner's.

"2. John J. Groner had notice of all the proceedings, was served with the summons, which he failed to answer, and by reason of laches cannot now claim for improvements.

"3. No independent action can be brought for improvements, but it must be brought in by equitable defense in the action of ejectment or by way of defense in an action for mesne profits.

"4. Without admitting that the plaintiffs have a cause of action at law, if they have any cause of action at all their remedy is at law."

Under the Act of April 13, 1807, 4 Sm. Laws 476, the Act of April 3, 1903, P. L. 139, and the Act of April 24, 1931, P. L. 56, the sheriff performed his duty in making John J. Groner a party. It would have been more regular if, after the sheriff's return, his name had been added to the record, but in this equitable action it can make no difference that as a matter of fact his name was not added. He had the opportunity of appearing in the action of ejectment. He knew the case was being tried. He was present, and he should have made his claim. He has no equity which is to be protected in the present proceedings. It was unquestionably the duty of the prothonotary to enter the name of John J. Groner to the record. He could have been compelled to do so by the plaintiffs: Marshall v. Forest Oil Co., 198 Pa. 83; but it was also the privilege of John J. Groner to go ahead and assert his claim in the ejectment suit to which he was summoned by the sheriff. The legal effect of a summons and the effect of neglecting to appear and make defense is discussed at length by Mr. Justice Kephart in Federal Land Bank of Baltimore v. King et al., 294 Pa. 86, 96-98. In Armstrong v. Connelly, 299 Pa. 51, the syllabus is: "On a sci. fa. sur mortgage against a deceased mortgagor where it appears that the wife of the mortgagor is in possession of the mortgaged premises, and she is served as provided by the Acts of July 9, 1901, P. L. 614, and April 23, 1903, P. L. 261, she becomes a party to the proceedings, and has a right to appear and set forth any defense which she may have." At page 55, Mr. Justice Sadler discusses the effect of the

Acts of 1901 and 1903, and his conclusion is that, having been served, she became a party to the suit. The learned counsel for the plaintiffs states his position as follows:

"1. Whether an occupant of land, who is neither made a party defendant to an ejectment action nor served with the declaration, and therefore does not defend the action, is barred from subsequently instituting proceedings to recover for valuable improvements placed on the land under an innocent mistake, merely because he was served with the summons in ejectment?

"2. Where an occupant of land, believing he has absolute title thereto, makes improvements thereon with the knowledge of the real owner, who stands by and permits the erections to proceed without giving any notice of his claim, may he sue in equity for the value of his improvements?"

Before referring to those legal positions, we must refer to the testimony. At the outset we gave a reference to the prior litigation between the Keiths and John Lewis Groner. We find that on April 8, 1928, the Keiths presented a petition for a rule on John Lewis Groner to bring an action of ejectment. On June 25, 1928, we made that rule absolute, and directed that the ejectment should be brought. That suit was brought, and the Keiths filed a disclaimer on January 20, 1930. Edward Broad subsequently brought suit on May 19, 1931, for the same premises. Then, subsequently, the last suit was instituted on November 16, 1931. Thus for a period of more than 3 years there was litigation about this tract of land which John Lewis Groner leased to John J. Groner on May 1, 1931. John J. Groner testified that he first knew of the claim of the Keiths against John Lewis Groner for the land in suit when the action of ejectment was started, but he admits that he knew about the first suit, the second suit, and the third suit. He testified as follows:

"Q. The first suit was instituted before you had anything to do with this property? A. That is right. Q. And that was a suit instituted by Mr. Keith against your uncle? A. That is right. Q. And the second suit was a suit by Mr. Broad against your uncle? A. That is right. Q. And the third suit was the final suit of Mr. Keith against your uncle? A. Yes, sir. Q. So that this started in 1929, the first suit, long before you went up on that property; is that right? A. That is right. Q. When you started to do work on this property, did you look up the records to the property at the courthouse to find out about this suit? A. I didn't think it was necessary. Q. After all this litigation had taken place about the property, you didn't care who owned the property? A. That is right. Q. Then you relied on the word of your uncle rather than look up the records? A. And his attorney. Q. Who placed the foundation on this property for this building? A. Mr. Keith. I believe it was there when we came there. Q. And you knew Mr. Keith put it there? A. I think so. I didn't see him put it there. I was told so. Q. And there was a lot of lumber on this place when you got there? A. I wouldn't say there was a lot of lumber there, no. Q. There was lumber there? A. There might have been. Q. Could you use that lumber that you found on these premises? A. I don't know what lumber you are referring to. Q. I don't care what lumber I am referring to. I am referring to lumber on the premises. Was there or was there not any lumber on the premises when you got there? A. The only lumber on the premises when we got there was a small building and a few scantling that laid on the foundation that had been erected by Mr. Keith. Q. And in this building the first floor joists had been laid, had they not? A. You can possibly refer to them. I would assume they were the same lumber that I am referring to as scantling. Q. What part of this building was up? A. None."

Prior to that he testified on direct examination as follows: "Q. Sometime prior

to 1931, or during 1931, did you lease from your uncle a piece of ground? A. Yes. Q. And at the time that contract of leasing was entered into, was it represented to you that your uncle was the owner of this piece of ground? A. Yes. Q. And by whom was that representation made? A. By my uncle and by Willard Paff. Q. By Willard Paff the lawyer? A. That is right. Q. And after the making of those representations did you enter into a written lease? A. Yes."

Both John J. Groner and Keith testified that they did not know each other prior to a time after the building had been erected, and after the last suit had been instituted, when John J. Groner called on Keith and wanted him to settle the case, but while they had no personal acquaintanceship it must be evident to everyone that the present plaintiff, John J. Groner, was not ignorant of the fact that this land was in litigation, and it is undisputed that Keith called on John Lewis Groner while the building was being erected to inquire about its erection, and John Lewis Groner would not speak to him. It is also undisputed that Keith did not know that John J. Groner had any interest in the property as lessee until he came to speak to him about settlement. This case is therefore entirely unlike the many cases cited by the learned counsel for the plaintiffs. John J. Groner knew all about the litigation, and was willing to take the risk of his uncle losing the suit. When that event happened, he was not in a position to complain any more than his uncle would be. In Paull's Executors v. Eldred and Hill, 29 Pa. 415, the syllabus is: "Where a party recovers premises, by a verdict and judgment in ejectment, and is put into possession under the judgment in such action, the defendant cannot afterwards maintain an ejectment to recover compensation for improvements made while in possession, under the condemned title.

"If the party had such an equity, arising out of the circumstances connected with his claim and possession, as entitled him to compensation for improvements made, it did not constitute a title to the land, but merely an equitable lien, and a right to hold the possession until it was satisfied.

"Having failed to interpose it as a defence to an action of ejectment brought against him, and to have it enforced by means of a conditional verdict, he cannot afterwards make it the subject of an independent action."

Putnam v. Tyler, 117 Pa. 570, is an interesting case. It was an action of ejectment. It was brought before Judge Dean, who afterwards became a member of the Supreme Court. The opinion was by Mr. Justice Clark. Each of these judges was an expert in ejectment cases. At page 588 of the opinion there is a good discussion. The court said: "The principle of the common law is, that the rightful owner is under no obligation to pay for improvements which he never authorized: Gregg v. Patterson, 9 W. & S. 209. It is now an established principle, however, to allow a bona fide occupant, under color of title, to mitigate the claim for damages and mesne profits by introducing proof of the value of permanent and useful improvements. This principle was engrafted upon the common law through the medium of equity; Sedg. & Waite on Trial of Title, 691; Walker et al. v. Humbert, 55 Pa. 407; Morrison v. Robinson et al., 31 Pa. 456. The general policy of the law, where no statute intervenes, is to allow the value of improvements only by way of set-off against or in mitigation of damages for the detention of the land, and the value of betterments cannot, therefore, usually exceed the amount of the plaintiff's damages and mesne profits: Sedg. & Waite, 698.

"It is a well settled principle of equity, moreover, that when a bona fide possessor of property makes meliorations upon it, in good faith and under an honest belief of ownership, and the real owner is for any reason compelled to

come into a court of equity for relief, that court, applying the familiar maxim that he who seeks equity must do equity, will compel him to pay for those improvements, as far as they are permanently beneficial to the estate and enhance its value: Story's Eq., 779; Pomeroy's Eq., 1241; Skiles's Appeal, 16 W. N. 246. This is the extent to which the courts of this state have gone in allowing for improvements, and it will be seen that the claim of the defendants cannot in this case be sustained."

Fricke v. Safe Deposit & Trust Co., Admr., 183 Pa. 271, was a bill in equity against a plaintiff who had recovered a judgment in ejectment. It was sought to make him account for the improvements placed on the property by the defendant. Judge McClung of Allegheny County, held as follows: "Under the case as presented by the bill it is clear that the plaintiff has no claim other than such as it was his right and duty to enforce, either upon the trial of the ejectment (if, as he claims, the act of 1842 applies), or by way of defense to an action for mesne profits. The defendant here—plaintiff in the ejectment—recovered upon a legal title, and cannot be brought into equity and made to account for the value of the improvements. The demurrer should be sustained and the bill dismissed at plaintiff's cost."

That case was affirmed upon his opinion. The case was referred to in Neeld v. Cunningham, 216 Pa. 523, and the principle was reaffirmed, but it was held that the mere fact that the matter was not adjudicated in the first trial would not prevent its being adjudicated in the second trial. The Act of May 8, 1901, P. L. 142, providing that one verdict in an ejectment case shall be final and conclusive, renders that decision of little value. Each of the present plaintiffs is in exactly the same position as John Lewis Groner would be if he had filed a bill for the improvements, and John J. Groner, by not appearing to the action in which he was served, is in default and cannot recover. It also appears in this case that John J. Groner knew that the defendants herein had started to build the very building that he afterwards completed. The testimony of Keith is undisputed that he expended $800 in digging the cellar and laying up the foundations, and $400 more for the lumber which was to be used. John J. Groner must have known, from the mere fact that he found this improvement on the property and this lumber which at the time was intended for the building, that Keith had a claim to the property. The learned counsel for the plaintiffs, however, contends that Keith should have done something more than he did to prevent John J. Groner spending his money. Keith testified that he made inquiry of John Lewis Groner and that he would not talk to him, and both he and John J. Groner agree that they did not know each other prior to the institution of the suit. The authorities cited by the learned counsel for the plaintiffs are readily distinguishable on their facts from the present case. They are not applicable to support his contention. In Crest v. Jack, 3 Watts 238, Mr. Justice Sergeant said: "If a stranger enter on the land of another, and make improvements by erecting buildings, they become the property of the owner of the land. Were it not so, a person might gain a title by the commission of a trespass, and strip his neighbour of his estate, or subject him to compulsory expenses under the pretext of improving his property. The foundation of property consists in its being an exclusive right: other persons cannot impair its enjoyment, or impose burthens on it by intermeddling with it without the owner's leave, or color of legal authority."

Again he said: "This is the rule at law. There are, however, cases in which an owner of land standing by and permitting another to expend his money in improving it, has, in equity, been deemed a delinquent, and been compelled to surrender his right on receiving compensation, or else to pay for the improve-

ment. But in these cases there is always some ingredient which would make it a fraud in the owner of the land to insist on his legal right. There is something like encouragement to the other's going on; or the one party acts ignorantly and without the means of better information, and the other remains silent when it is in his power to prevent him from expending his money under a delusion. To permit such a one to take advantage of the mistake would be revolting to every sentiment of justice. But on the other hand I know no case where equity has, on the mere ground of silence, relieved one who is perfectly acquainted with his rights, or has the means of becoming so, and yet wilfully undertakes to proceed in expending money on the land of another without obtaining or asking his consent. His ignorance, if it exists, is wilful, and he acts at his peril."

In Carr v. Wallace, 7 Watts 394, 400, the learned counsel quotes the words of Mr. Justice Rogers: "There is no principle better settled", etc. He neglects to quote the following, which, it seems to us, is controlling: "No person can doubt that the defendants supposed they had a good title. They had taken pains to procure the assent of all the commoners, and supposed they had succeeded. The plaintiff knew they were expending their money under a delusion, it was therefore his duty to have informed them of his claims. Having failed to do so, he is estopped in equity from asserting them now, after the lapse of several years, and after having, by his acquiescense, induced the expenditure of large sums of money. But the plaintiff replies, that his title was on record, and relies on the cases of Crest v. Jack, 3 Watts 238; 17 Serg. & Rawle 383; Hepburn v. M'Dowell, 2 Penns. Rep. 23; 2 Rawle 93. But the distinction between the cases is very plain. In these cases the person who made the improvements was well aware, or might have informed himself, with ordinary care, of the title of the other party. He acted under no delusion, nor was he ignorant of his rights. In Crest v. Jack, which is much relied on, Blair was well acquainted with the titles of the respective parties, having acted as an agent of the former owner in receiving the rents. The principle decided in these cases is, that equity will not, on the mere ground of silence, relieve one who is perfectly acquainted with his rights, or who has the means of becoming so, and yet wilfully undertakes to proceed in expending money on the lands of another without obtaining or asking his consent. His ignorance of it is wilful, and he acts at his peril."

In the present case, John J. Groner knew that there was a dispute about this title, and he admitted that he relied on what his uncle and Willard Paff said, that the uncle's title was good. That is not sufficient, as the learned justice points out. He acted entirely on the assumption that his uncle had the better of the dispute, but the result of the trial showed that his uncle was mistaken. In Woods v. Wilson, 37 Pa. 379, 384, the same view is expressed by Mr. Justice Thompson, as follows: "The law of estoppel, it has been said, suppresses truth whenever it operates. This is so, but by this means the ends of justice are frequently subserved. It restrains a party from claiming in opposition to his acts and declarations, when to do so any injury would result to the innocent and blameless, which the law could not redress. It operates, however, only in favour of those who, after the exercise of diligence, are still ignorant of an opposing title, and against those who, aware of their own title and knowing it to be secret, are silent. When both parties are aware of their respective rights, it has no place in law or equity."

In Tonge v. Item Publishing Co., 244 Pa. 417, the syllabus is: "The doctrine of equitable estoppel by matter in pais requires that where the conduct of the party has been such as to induce action, by another, he shall be precluded from afterwards asserting to the prejudice of that other the contrary of that in

which his conduct has induced belief. The element of fraud is essential, either in the intention of the party estopped, or in the effect of the evidence which he attempts to set up. If the truth be known to both parties, or if they have equal means of knowledge, there can be no estoppel."

In Leininger v. Goodman, 277 Pa. 75, the syllabus is: "If a man has been silent when he ought in conscience to have spoken, he shall not be permitted to speak when conscience requires him to keep silent."

Mr. Justice Walling reviews all the authorities at page 78. In Muia v. Herskovitz et al., 283 Pa. 163, Mr. Justice Sadler said: "Of course, if one fails to protest when he should have spoken, he will be debarred from subsequently complaining of an act which may have been wrongfully committed: Leininger v. Goodman, 277 Pa. 75. But here, both parties had equal knowledge of the extent of their respective titles, and we are not prepared to say that the facts show abandonment of any legal rights which the plaintiff may have had. . . ."

There is nothing in this case which would lead John J. Groner to think that the defendants herein had, at any time, abandoned their claim to the real estate, nor to the improvements which they had made on it when they were lessees of the property.

It is unnecessary to discuss the third question, that equity should assume jurisdiction because there is no adequate remedy at law or any remedy at all. In our judgment, neither at law nor in equity have the present plaintiffs any claim. If they had interposed the present claim in an action of ejectment under the evidence taken at this hearing, the plaintiffs' claim in the action of ejectment for mesne profits would have been greater than the claim of the present plaintiffs in their bill in equity, and that would have precluded the latter from obtaining any money judgment in their favor. The motion of the plaintiffs to continue is denied, and the motion of the defendants, for the reasons given, is granted.

And now, May 7, 1934, the injunction heretofore granted is dissolved.

From Henry D. Maxwell, Easton, Pa.