# Cuttle *versus* Brockway *et al.*

A county commissioner may purchase at a treasurer's sale of unseated land, and take the title in his own right, provided he bid more than the taxes and costs: 12 *Harris* 145.

After the expiration of a county treasurer's term of office, and his successor has been duly qualified, a sale by him of unseated lands is void.

Unseated lands can only be sold by the county treasurers, in pursuance of public notice, and by open vendue; they have no authority to make private sales.

A redemption, after an invalid sale, does not strengthen the owner's title.

Where, after an invalid sale of unseated lands to the county, the commissioners, treating it as a nullity, continued to tax the land, a county commissioner is competent to purchase at a regular treasurer's sale founded on such new assessment; and is not estopped from setting up a title thus acquired against the former owner.

An estoppel can only be pleaded by one who was adversely affected by the act which constitutes it. Consequences which result from a party's own mistake or neglect are not ground of estoppel.

An owner of unseated lands is bound to take notice of the statutes authorizing it to be sold for taxes, and of the entries in the county commissioners' books.

[Cuttle *v.* Brockway *et al.*]

ERROR to the Common Pleas of *Elk county.*

This was an ejectment by John L. Cuttle against Chauncey Brockway and Fernando Brockway, for 300 acres of land, in Jay township, Elk county; being part of a tract, No. 4185, warranted in the name of James Wilson. The plaintiff claimed title under the warrantee.

The defendant, Chauncey Brockway, claimed, under a treasurer's deed, dated the 20th September 1848, in pursuance of a sale of the land, as unseated, for the taxes of 1846 and 1847.

The taxes of 1844 and 1845, not having been paid, the premises were put up for sale in 1846, by John Coleman, the treasurer of Elk county. No bid having been received for this tract, it was not sold; but Coleman, at the time of the settlement of his accounts, as county treasurer, on the 5th January 1848, executed a deed for these lands to the county commissioners, for the use of the county.

This was accepted by the commissioners (Chauncey Brockway, the defendant, being one of them); and on the commissioners' books, as well as on those of the treasurer, this tract was marked as sold to the county.

At the time of this conveyance to the commissioners, Coleman's term of office had expired; it extended only to the 3d January 1848; his successor, Henry Souther, received his certificate of election on that day, and executed his official bond, which was approved on the 5th of the same month. His bond to the Commonwealth, however, was not given until the 24th.

At the June sales, in 1848, this tract was sold by Souther, as treasurer, for the taxes of 1846 and 1847; and purchased by Chauncey Brockway, the defendant, who was still one of the county commissioners. And, under the deed made in pursuance of this sale, the defendants claimed title.

The plaintiff, being informed that the tract had been sold to the county in 1848, by Coleman, and that he had five years in which to redeem the land, neglected to do so until February 1852, when he paid the necessary amount to the treasurer, who gave a receipt for the same.

On the 9th October 1852, the defendant, Chauncey Brockway, went to the commissioners, and redeemed the land from the sale made to them by Coleman, and took an assignment of their title.

On the trial, the court below (WHITE, P. J.) delivered the following charge to the jury:—

"The patent to Wm. Parker, of the 23d of June 1831, conveyed to the patentee the title of the Commonwealth to the land in controversy, and the subsequent mesne-conveyances given in evidence, vested that title in plaintiff. The recital in the patent of a void sale of the warrant does not, in the absence of all evidence of claim on the part of the defendants to the title under the war-

[Cuttle *v.* Brockway *et al.*]

rantee, affect the right of plaintiff upon his title. But the difficulty in the case arises out of the tax sales.

"The defendants claim under the sale made by Henry Souther, treasurer, on the 12th of June 1848.

"It is alleged that this sale is inoperative and void, by reason of the prior sale made by Jacob Coleman to the commissioners, on the 5th of January 1848; and the payment of the redemption-money within five years from that date, as shown by the record in the commissioners' office, and the receipt to plaintiff. To sustain this view of the case, it is contended,

"1st. That the deed from Coleman to the commissioners is a valid deed.

"2d. Whether valid or not, its acceptance by the commissioners, and the entry of the tract upon their books, as having been purchased by them for the county, is conclusive against Chauncey Brockway (who was a commissioner at the time of both sales), and estops him from denying its validity.

"We dissent from both of these positions. Coleman's term of office expired on the 3d day of January 1848. After this date, he could do no official act, which would bind the county or the public at large. His sale, made on the 5th of January 1848, without adjournment to that time, or public notice or outcry, did not affect the title or rights of the owner of the land, and therefore vested no title in the commissioners or county. Satisfied as the commissioners were of the invalidity of their deed, it was their duty to treat it as a nullity—to continue the assessment of the land in their tax books, and to compel payment of the public dues on it by another sale. At that sale, Chauncey Brockway became a purchaser; although one of the commissioners, he had a right to purchase, and is not estopped now from denying the validity of the prior sale, because, in his official capacity, he had assented to it.

"The execution and delivery of the deed by Coleman, were not the acts of an officer, *de facto*, but those of a usurper without authority, or colour of authority. The doctrine of estoppel has no application to a case like this. Public officers are not bound to regard as valid, official acts which are void. If they are, in point of law, or fact, they may correct their errors without being subjected to responsibility, for the mistakes or losses of others, induced more by their own negligence, than official errors and mistakes.

"What right has the claimant of the legal title under Wm. Parker to complain? It was his duty to pay the taxes charged upon his land. The sale to the commissioners, if it had been a valid one, would not have absolved him from this duty. His land was advertised for sale, for taxes, in June 1846, and not sold. It was advertised for sale again, in June 1848, and sold. Of this

[Cuttle *v.* Brockway *et al.*]

sale the owner had notice; and this notice ought to have led him to a knowledge of the fact, that the sale to the commissioners, in January 1848, was void, and was so regarded by the county officers. An examination of the books in the commissioners' office, would have satisfied him that he had no right to claim exemption from payment of his taxes, for a longer period than two years, after the date of the sale to Brockway, in June 1848; and that, if he neglected to redeem within that period, his title would vest in the treasurer's vendee.

" In conclusion, we instruct you, that the sale to the commissioners of Elk county, by Jacob Coleman, on the 5th of January 1848, was void; and that the sale by Henry Souther to C. Brockway, on the 12th of June 1848, was valid; and not having been redeemed within two years from that date, vested title in said Brockway; and your verdict should be for defendants.''

To this charge the plaintiff excepted; and a verdict and judgment having been rendered for the defendant, the plaintiff removed the cause to this court, and here assigned the same for error.

*McEnally*, for the plaintiff in error.

*S. P. Johnson*, for the defendant in error.

The opinion of the court was delivered by

WOODWARD, J.—The plaintiff showed that he obtained the original paper title to the land in controversy, by a conveyance made to him by Richard and William Foulke, on the 17th of July 1851.

But the defendant showed that he had purchased the tract at treasurer's sale, on the 12th June 1848, for the taxes of 1846 and 1847, and had obtained the treasurer's deed therefor, reciting a bond for the surplus purchase-money, above taxes and costs.

That he was competent to purchase and take the title in his own right, though he held the office of county commissioner at the time, was decided when this case was here before, 12 *Harris* 147.

Why then should not his title prevail *against* that of the original owner? The plaintiff relies for answer to this question, upon the fact that Jacob Coleman, a former treasurer of the county, had sold and conveyed the tract to the county, on the 5th of January 1848, for the taxes of 1844–5, and that it was duly redeemed from that sale on the 9th of October 1852.

If this fact were well established, it would be fatal to the defendant's pretensions, for after the title to unseated lands has vested in the county by virtue of a treasurer's sale, the county is the trustee of the owner for five years if it be not sooner redeemed; and no agent of the county—neither the commissioners nor trea-

[Cuttle *v.* Brockway *et al.*]

surer—have power during that period to order it to a resale for current taxes or those of former years.

But was Coleman's conveyance to the county valid ? It seems that he went out of office on the 3d January 1848, and that Souther, his successor, received the certificate of his election and gave his official bond on that day. His bond was approved 5th of January 1848, and his certificate described his term of office as "two years from the 1st of January 1848."

Now what power had Coleman to perform an official act on the 5th of January 1848 ? He was *functus officio* on that day, as much as he was a month or a year thereafter. He could no more sell and convey than a dead man. And the county whose agent he had been, and who knew better than all the world beside, that he had been superseded by another officer, could take nothing by a purchase from him. His act was simply null and void.

If it had been the case of an adjourned public sale, it would bear an argument in favour of its validity, but it was not that. The testimony shows, that the county auditors had met on the 3d January, to settle Coleman's accounts, and that he claimed costs on some twenty or twenty-five tracts which had not been sold. To make sure of his costs, he went and made deeds to the county for the whole body of lands, including the tract in question here. Little, the commissioners' clerk, says, "They were not treated by the commissioners as regularly sold to them—the whole, or nearly all of them, remained on the land book with the taxes charged to them—the commissioners directed that they should remain on the land books." This witness says, there had been an adjournment of the sales to the 3d or 5th of January, but that no sale was cried on that day. The sale book of Treasurer Coleman shows several adjournments, from the 8th June 1846 to the 27th of February 1847, but none after that date.

The learned judge assumed that there was no adjournment to the 5th January 1848, and the weight of evidence is clearly so, whilst it is not pretended that there was any public notice or outcry. There was therefore no sale, for, under the Acts of Assembly empowering treasurers to sell unseated lands for taxes, they have no authority to make private sales, but are to convey titles only after sales made in pursuance of public notice and by open vendue.

If there was no legal sale to the commissioners, it follows that the redemption goes for nothing—the assessment of the taxes of 1846 and 1847 was regular, and the sale of June 12th 1848, valid.

But the plaintiff insists that, because Brockway was a county commissioner at the time, he is estopped from denying the validity of the sale to the commissioners.

We do not think the law of estoppel applies. Estoppels operate

[Cuttle *v.* Brockway *et al.*]

only between parties and privies, and the party who pleads an estoppel must be one who was adversely affected by the act which constitutes the estoppel. Consequences which result from a party's mistakes or neglects of duty are not ground of estoppel.

Now the act complained of here is, that the county accepted Coleman's conveyance, and thus led the plaintiff to suppose that all he had to do was to redeem his land within five years from that sale.

But Brockway does not stand in privity with the county.   He bought at Souther's sale in June, and that passed no title or interest of the county, but transferred the title of the original owner.   He claims, not under the county, but under the plaintiff himself, who, if he had not neglected to pay his taxes and to redeem after the treasurer's sale, would not have lost his title.

Brockway was, however, one of the three county commissioners, and this, it is supposed, makes him responsible for what was done.   The acceptance of Coleman's deeds and the entries directed to be made on the books, were acts which the other two commissioners were competent to perform without Brockway's knowledge or concurrence; and there is no direct evidence to bring home knowledge to him.

If it be said, that knowledge may be implied from the entries in the books of his office, then it must be observed, that these entries imported that Coleman's conveyance had been repudiated, and the plaintiff's land taxed as if no sale had been made.   And these entries were open to public inspection, so that Cuttle, as well as Brockway, had the chance of learning that the county did not claim or hold the land under the deed of Coleman.

How then is Brockway to be affected by a void act, the only notice of which, that is brought home to him, was notice that it was set aside and treated as if it had never occurred?   Would a director of a bank or railway company be prevented from buying and setting up a good title to land, because the corporation to which he belonged had purchased a spurious title?   Would any agent of any principal be subject to such a rule, especially after the principal had rejected the spurious title?   To ask such a question, is to answer it.   It won't bear an argument.

Yet, the man who should pick up such a cast-off title, would be in better condition to plead an estoppel, than the present plaintiff, for he got no title whatever from the county by his redemption. He merely annulled any possible effect of the sale to the county, and had what he had before, his own title.

In view of these circumstances of the parties, we rule that the doctrine of estoppel cannot avail the plaintiff—that an official act of a defunct and superseded public officer, performed in accordance with no law or usage, but in violation of a directory

[Cuttle *v.* Brockway *et al.*]

statute, estops nobody but himself from setting up the truth, and concludes nothing.

Nor has the plaintiff any reason to complain that he was misled. He knew the law. He knew that his land was subject to assessment—that it had been assessed and was liable to sale for unpaid taxes. Of the time and place of sale, he had also all the notice which the law prescribes, and after the sale to Brockway, he had two years within which to defeat it by a redemption.

Here was enough, to say the least of it, to put him on inquiry into the validity of the sale to the commissioners, and if he did inquire and misjudged the legal effect of that sale, there is no more reason for charging his misfortune on Brockway than on any other man. If he did not inquire into it, the loss of his land is due to his negligence.

That Brockway did or said aught to mislead or throw the plaintiff off his guard, was not proved or offered to be proved. The effect of the proceedings of the county commissioners, was a question for the plaintiff to settle for himself under the law of the land. A mistake in this regard neither estops Brockway nor impairs his title. A very simple remedy for Cuttle was to pay his taxes, which would have resolved all doubts and saved his title.

On every ground, we are of opinion, that the court were right in directing a verdict for the defendant.

There are two bills of exception to evidence which are assigned, but one of them cannot be noticed because the deposition of Thayer on which it is founded is not furnished.

The other was an offer to prove by Shultz that, in February 1852, the plaintiff went to the commissioners to redeem the land from the title of the commissioners and of Brockway.

A redemption in 1852 could avail nothing as against Brockway's title, and if there was any virtue in a redemption from the sale to the commissioners, that which was made in October 1852 was as good as that which was offered the February before. The offer did not tend in any manner to impair Brockway's title or to establish the plaintiff's, and was therefore properly rejected as irrelevant.

The judgment is affirmed.