## Rhawn v. Edge Hill Furnace Company.

*Corporations—Ownership of the whole stock by one person.*

A corporation is an entity, an existence, irrespective of the persons who own all its stock.  The fact that one person owns all of the stock does not make him and the corporation one and the same person.

*Estoppel—Fraud—Silence.*

Silence becomes a fraud and works an estoppel only when a party withholds information which the other party does not have or does not possess the means of obtaining, and which he should have to protect his rights.  Where both parties know the facts or have equal means of knowledge of the facts, the silence of either in regard to them is not a fraud upon the other party.

*Corporations—Ownership of all stock by one person—Estoppel—Silence—Bonds—Detached coupons.*

Where a person who is practically the owner of all the bonds and stock of a corporation, detaches the coupons from certain of the bonds after the coupons were past due, and pledges the bonds with the coupons thus detached as security for a debt with a bank, at which the coupons were payable, and the president of which was one of the trustees named in the mortgage, and the owner of the bonds at the time they were pledged makes no representations one way or the other as to whether the coupons which had been detached had been paid, canceled or destroyed, or were to be held by him as a lien on the mortgaged property prior to the bonds pledged, the owner, or the persons to whom the owner has pledged the detached coupons for an antecedent debt, are entitled to come in on the fund subsequently raised by a sale of the mortgaged property under foreclosure proceedings in priority to the bonds from which the coupons were detached.

Argued Jan. 8, 1902.  Appeal, No. 188, Jan. T., 1901, by Heller, Hirsh & Company, from decree of C. P. No. 2, Phila. Co., March T., 1898, No. 688, dismissing exceptions to auditor's

report in case of William H. Rhawn and Charles E. Pancoast v. Edge Hill Furnace Company. Before McCollum, C. J., Mitchell, Dean, Fell, Brown, Mestrezat and Potter, JJ. Reversed.

Exceptions to report of J. E. Carpenter, Esq., auditor.

The facts are fully stated in the opinion of the Supreme Court.

*Errors assigned* were in dismissing exceptions to auditor's report.

*Benjamin Alexander* and *John G. Johnson*, for appellants.— The principle is established beyond question that a detached coupon is as distinct and valid a security as the bond from which it was detached : Beaver v. Armstrong, 44 Pa. 63 ; North Penna. R. R. Co. v. Adams, 54 Pa. 94 ; Clark v. Iowa, 20 Wallace, 589 ; DeGraaf v. Wyckoff, 13 Daly (N. Y. C. P.), 366.

Detaching a coupon raises no presumption of intention to destroy it, but the presumption is always in favor of the continued vitality of the coupon : Ketchum v. Duncan, 96 U. S. 659.

The auditor's erroneous assumption of fact, that Richardson owned all the bonds, and the fact that he owned nearly all the stock of the company, even if correct in fact would not justify the auditor's assumption that Richardson was the company and owed the bonds to himself: Humphreys v. McKissock, 140 U. S. 304 ; 11 Sup. Ct. Repr. 779.

The finding of the auditor, that the testimony is silent as to any representations made at the time of the pledge, furnishes no basis for finding estoppel against Richardson to claim on these coupons : Hill v. Epley, 31 Pa. 331 ; Lawrence v. Luhr, 65 Pa. 236 ; Chicago, etc., Ry. Co. v. Turner ; 44 N. W. Repr. 174 ; State Finance Co. v. Com. Title & Trust Co., 72 N. W. Repr. 68.

The bank is estopped to claim that its bonds are entitled to postpone appellant's coupons because when the bank sold to itself the bonds to foreclose its pledge, it represented them at the sale as postponed to the coupons : Dustan v. McAndrew, 44 N. Y. 72.

Even if there is estoppel, it avails only to the bank of the republic and not to the other claimants : Ketchum v. Duncan, 96 U. S. 666.

*N. Dubois Miller*, with him *Biddle & Ward*, for appellee.— The question of payment or cancelation of coupons is one of fact to be determined by the jury or auditor under all of the circumstances of the case : Wood v. Guarantee Trust & Safe Deposit Co., 128 U. S. 416 ; 9 Sup. Ct. Rep. 131 ; Fosdick v. Schall, 99 U. S. 235 ; Chicago, etc., Ry. Co. v. Turner, 44 N. W. Repr. 174 ; State Finance Co. v. Com. Title & Trust Co., 72 N. W. Repr. 68 ; Union Trust Co. of N. Y. v. Monticello & Port Jervis Ry. Co., 63 N. Y. 311.

The statute of limitations is a complete bar to appellants' claim : Phila. Trust Co. v. Phila., etc., R. R. Co., 160 Pa. 601 ; Clark v. Iowa City, 20 Wall. 583 ; City of Kenosha v. Lamson, 9 Wall. 477 ; Lexington v. Butler, 14 Wall. 282.

OPINION BY MR. JUSTICE MESTREZAT, March 3, 1902 :

In January and February, 1888, Charles Richardson conveyed to the Edge Hill Furnace Company, incorporated under the laws of Pennsylvania, certain real estate situate in Montgomery county. The consideration for this conveyance was the delivery to Mr. Richardson of 200 coupon bonds of the corporation, each of the par value of $1,000, secured by a first mortgage on the premises. There was also issued to Mr. Richardson, with the exception of a few shares, all the capital stock of the corporation amounting to $200,000. The mortgage was dated February 1, 1888. The bonds were due on February 1, 1898, and they and the interest coupons were negotiable and were payable at the National Bank of the Republic of Philadelphia. The president of this bank was one of the trustees named in the mortgage. It was provided in the mortgage that the purchase money arising from the sale of the premises under foreclosure proceedings should be appropriated to the payment, " First, of the interest due on, and, secondly, of the principal of all the aforesaid bonds then outstanding, if the said proceeds be sufficient, but if not, then pro rata."

Between October 9, 1888 and December 14, 1896, the National Bank of the Republic came into possession of $170,000 of

these bonds and held them as collateral security for the payment of an indebtedness of Richardson to the bank. On February 23, 1898, the bank sold the 170 bonds at auction and purchased them for $850, being $5.00 per bond. Default having been made in the payment of the bonds and the interest coupons, the trustees, pursuant to a request of the National Bank of the Republic and a decree of the court of common pleas No. 2 of Philadelphia county, sold the mortgaged premises July 19, 1898, and the bank became the purchaser. The proceeds of the sale amounted to $40,345.80, and the amount for distribution among creditors, as shown by the trustees' account, was $38,701.52. This ·was insufficient to pay the interest on the bonds, represented by the outstanding coupons, and hence there was nothing applicable to the principal. There were six claimants for this fund before the auditor; five of them, including the National Bank of the Republic, presented bonds with the coupons attached. The other claimant, Heller, Hirsh & Company, the appellants, presented 674 interest coupons of which 639 were detached by Richardson from the bonds held by the National Bank of the Republic as collateral for his indebtedness to it, before he delivered the bonds to the bank, and thirty-five were likewise detached by him from bonds delivered as collateral by him to other parties. These coupons were for interest from August 1, 1888, to August 1, 1890, and were placed in the hands of the appellants in December, 1898, by Richardson with instructions to collect them if possible and with the proceeds to pay the indebtedness due them from Richardson and also other debts due by him to other creditors. The coupons held by appellants were past due when the bonds from which they were detached were delivered as collateral to the creditors of Richardson. The auditor found that " the testimony is silent concerning any representations one way or the other made by Mr. Richardson, at the time he handed or transferred them (the coupons) to the bank, as to whether the coupons which had been detached had been paid, canceled, destroyed or held by him as a prior lien on the mortgaged property to the bonds which he was then assigning or transferring as collateral security." ·

The learned auditor and the court below refused to allow the coupons held by appellants to participate in the fund for distribution. The following extract from his report shows the

reasons for the auditor's conclusion : " Under the circumstances attending the pledging of these bonds by Mr. Richardson to the bank, the auditor reports that in his opinion, a presumption arises that the bonds were complete, and that the coupons which had been detached by Mr. Richardson and which were payable to Mr. Richardson by Mr. Richardson- who was in effect the Edge Hill Furnace Company, were to be presumed to be canceled or destroyed and treated as paid. The bonds in their then condition were handed to the bank as complete and no notice was given to the bank to the effect that the detached coupons would be claimed by Mr. Richardson, who was practically owner of all of the stock of the company as well as of all its bonds. He cannot now, in the auditor's opinion, come and ask payment of the then past due detached coupons out of a fund arising from the foreclosure of the mortgage. The coupons which he himself had detached when they were payable to himself must be presumed to have been canceled or treated as paid. The presumption in such a case is that the owner of the bonds and coupons, cutting off all of the back coupons which were payable to himself by himself practically means to represent to the purchaser or pledgee of the bonds that the past due coupons have been canceled or paid, and he will not be permitted afterwards to resuscitate these past due coupons for the purpose of claiming their value as a prior lien on the fund arising from the foreclosure of the mortgage which is insufficient to pay the bonds pledged by him as security or the debt secured thereby."

It therefore appears that the auditor excluded the appellants' coupons from participating in the distribution of the proceeds of the sale of the mortgaged premises on the ground that there is a presumption that the bonds were complete at the time they were delivered to the bank as collateral and that the detached coupons were presumed " to be canceled or destroyed and treated as paid." This presumption, as we understand the learned auditor, is aided partly by what he regards as a fact, namely, that Richardson was the Edge Hill Furnace Company.

These bonds were not sold to the bank but were pledged as collateral for a loan. Some of them went indirectly to the bank through other parties from whom the bank received them.

When deposited with the bank the coupons had been detached. Hence the bonds and the attached coupons became the pledge accepted by the bank for the security of its loan. Presumably it was satisfied with the collateral tendered by Richardson or the security would not have been accepted. On presenting the bonds, he made no false representations and concealed nothing from the pledgee concerning them or the detached coupons. He misled the bank in no way in regard to the security he gave it or the overdue detached coupons. The matured coupons had been detached and the bank was cognizant of this fact. Richardson did nothing by act or word, to mislead or defraud the bank as to the ownership or validity as an existing indebtedness of the detached coupons at the time he pledged the bonds. The auditor finds that " the testimony is silent concerning any representations one way or the other made by Mr. Richardson at the time he handed or transferred them to the bank." It is apparent that the bank was satisfied with its security, regardless of the cancelation or payment of the detached coupons. It made no inquiry concerning them and received no information from Richardson that misled it.

Under the facts of the case, we are unable to see that there arose any presumption of payment or cancelation of the detached coupons when Richardson pledged the bonds from which the coupons held by the appellants were detached. It is solely upon this ground that the auditor refused to allow the appellants any part of the fund for distribution. Richardson conveyed to the corporation the property, the proceeds of which are being distributed, and these bonds represented the consideration he received. As the owner of the bonds and the attached coupons he could dispose of them as he saw proper. He could do what he did—pledge different portions of them to different parties. He could have pledged the bonds to one party and the coupons to another, and the holder of either security would have been entitled to participate in the fund for distribution according to the terms of the mortgage which secured its payment. No presumption arises that Richardson intended to make a gift of any part of them or their accrued interest to the other creditors of the Edge Hill Furnace Company. This would be the effect of the cancelation of the interest coupons held and retained by him when he pledged the bonds.

It cannot be maintained with reason that had these coupons been detached and transferred before maturity for value, any presumption of cancelation would have arisen. Had he made this disposition of the coupons, the transferee would have been entitled to participate in the fund in court pro rata with the other outstanding coupons and to the exclusion of the bonds held by the appellees. No presumption arises in either case that Richardson intended to cancel or destroy the detached coupons. He gave to the bank satisfactory collateral for its loan, but he did not pledge to it these coupons or agree to cancel or destroy them. The title to them remained with him and subject to his disposition.

That the bank could not have been misled, or believed that the detached coupons had been canceled or paid when the bonds were pledged as collateral, is evident from the fact that it was the depositary at and through which the coupons as well as the bonds were payable. The president of the bank was also one of the mortgage trustees. These facts doubtless account for the silence of both parties concerning the matured coupons when the bonds were deposited. The bank knowing all the facts relative to the detached coupons made no inquiry or investigation as to the holder or owner of them, or whether or not they were to be regarded or treated as canceled. They had not been paid and were a lien on the mortgaged premises entitled to be paid out of the proceeds of a foreclosure sale prior to the pledged bonds. The bank knew these facts as well as Richardson. His silence, therefore, cannot be attributed to a desire to mislead or defraud the bank as to his intention to collect the detached coupons, nor can it be presumed that such was its effect on the pledgee. Hence it cannot be construed into an estoppel of the present holders of the coupons in asserting their right to payment out of the fund in court. Silence becomes a fraud and works an estoppel only when a party withholds information which the other party does not have or does not possess the means of obtaining and which he should have to protect his rights. Where both parties know the facts or have equal means of knowledge of the facts, the silence of either in regard to them is not a fraud upon the other party.

The position of the learned auditor that Richardson was the Edge Hill Furnace Company because he owned its bonds and

the most of its stock, doubtless led him to the erroneous conclusion that the detached coupons were presumed to be paid. These facts, however, did not constitute Richardson the corporation. "A corporation," says Mr. Cook in his work on Corporations, section 6, "is an entity, an existence, irrespective of the persons who own all its stock. The fact that one person owns all of the stock does not make him and the corporation one and the same person." Richardson was a creditor of the corporation to the extent of the detached coupons and occupied the same relation to the corporation as any other creditor. Unless he saw fit to cancel this claim of interest against the corporation, and we have no evidence that such was his intention, his ownership of most of the stock of the corporation will not raise a presumption that he intended to forego his right to demand payment of the coupons retained by him when he pledged the bonds from which they were detached. He did not pledge these coupons to the bank nor did he agree with the bank that he would cancel them. With a knowledge of the further fact that the coupons had not been paid at the time the collateral was taken, the bank is not in a position to demand the payment of the coupons owned by it to the exclusion of those held by the appellants.

Appellants were entitled to collect the coupons transferred to them by Richardson and in their possession. He delivered them to the appellants for that purpose. The amount received on them from the fund for distribution will be applied to the payment of the claim of appellants against Richardson, and if there is any balance, it will go to his other creditors for whom appellants hold the coupons.

We have considered the only question raised before the auditor and court below and upon which they determined the case in favor of the appellees. We are of opinion that under the facts disclosed by the evidence, the conduct of Richardson when he pledged the bonds will not prevent the appellants from participating in the fund for distribution, and that, therefore, the auditor and court below erred in not awarding the appellants their pro rata share of said fund.

The decree of the court below is reversed, and the record is remitted that distribution may be made in accordance with the views set forth in this opinion. Costs of the appeal to be paid by the appellees.