# Tustin *v.* Philadelphia & Reading Coal & Iron Company, Appellant.

*Mines and mining—Contracts—Leases—Construction—Rent—Accord and satisfaction—Estoppel.*

1. An interpretation will not be given to one part of a contract which will annul another part of it or produce absurd results.

2. When the terms of a contract are doubtful or capable of two different interpretations, the meaning put on the instrument by the parties themselves may be shown and will be enforced by the courts; but where the contract is not ambiguous or uncertain in its terms and the intention of the parties is not doubtful, the construction acted upon by the parties is not controlling and will not be enforced.

3. In the lease of a mining property, the lessees covenanted: (1) "to pay to the party of the first part, as rent for the demised premises," a graduated rent, according to the size and character of the coal "mined and carried away or shipped from the demised premises" during the years from 1884 to 1890, then increasing certain amounts each year to the end of the term; (2) "to pay a rent or right of way of five cents per ton on all coal mined from other adjoining lands and carried through the said demised premises, during said lease, to be paid monthly, at the same time and in the same manner as hereinafter provided for the payment of rents on coal mined from the demised premises"; (3) "to pay the rents in cash at the office of the party of the first part......on the 15th day of each and every month during the term hereby created, for all coal mined and shipped from the demised premises during the preceding month," and, finally, "to mine and ship from the demised premises" after January 1, 1888, at least 8,333 tons every month, ending with the last day of each month until January 1, 1890,...... "and if in any one month as aforesaid it shall not have mined and shipped, from the said demised premises at least 8,333 tons of coal, then to pay to the party of the first part on the 15th day of the next succeeding month, in cash, as a liquidated rent for the said premises during said month such a sum of money as, when added to the rents accrued during said month shall be equal to the sum of $2,917," with a similar provision for the monthly minimum royalty of $3,500 from January 1, 1890, to the end of the term. If the lessee should pay in any one month a rental over and above what was due for such month, if calculated upon the number of tons shipped, then the lessee in any succeeding month (if it should

have paid rent on at least 8,333 tons in said succeeding month) might deduct the sum paid in any previous month over and above the amount of rent, if calculated upon actual tonnage, from the rent due in such succeeding month from the surplus amount of coal mined in said succeeding month over and above 8,333 tons. In an action for the difference between the total of the amounts paid by the lessee, during the term of the lease and the total claimed to be due under the provisions thereof, it appeared that the lessor had represented certain beneficiaries as administrator of their father's estate, and with their consent, under the terms of the will, had power to execute the lease. In the instrument in which they authorized the execution of the lease there appeared a recital that the lessees proposed to pay a certain rental per ton for the coal mined and removed from the demised premises, and "a right of way of five cents per ton on all coal mined from other lands and carried through the improvements agreed to be erected." The controlling question was whether the minimum monthly royalty or liquidated rental required to be paid under the lease included the right of way charge on coal mined on adjoining lands and carried through the demised premises, or whether the right of way charge was to be paid in addition to the minimum royalty required by the lease. *Held,* that under the terms of the lease the defendant was required to pay a right of way charge in addition to the minimum monthly royalty and that when it failed to mine 8,333 tons in any month it was required to pay the difference between the royalties on the coal actually mined and the minimum, and also to pay the right of way charge of five cents per ton on all coal carried through the leased premises from the adjoining tracts.

4. An estoppel can be claimed only by one who has acted in ignorance of the true state of facts, and who was without suitable means of informing himself of their existence.

5. In such case the use-plaintiffs were not estopped from maintaining such action by reason of the fact that the vouchers received by the administrator and returned to the company stated that the sum remitted to him was in payment of "rent on coal mined" or "of the minimum rental on coal mined" and the amount was the minimum sum payable for the month, and was "received in full for the above account," where it appeared that the vouchers and receipts were prepared by and signed at the request of the defendant company, which had full knowledge of their contents and the purpose for which the money was paid and received, and the beneficiaries had no knowledge that would be necessary to an understanding of the situation so that they could have made a demand at the time when the amounts now claimed were respectively due.

6. In such case the amount received by the plaintiff as administrator was a part of the larger sum due under the terms of the lease and was not an accord and satisfaction, and the statements or memoranda, if considered as accounts stated, were not conclusive so as to bar the present action.

Argued May 5, 1915. Appeal, No. 100, January T., 1915, by defendant, from judgment of C. P. No. 1, Philadelphia Co., March T., 1911, No. 280, on verdict for plaintiff in case of Ernest L. Tustin and Charles P. Lineaweaver, administrators d. b. n. c. t. a., under the will of Hugh Bellas, deceased, v. The Philadelphia & Reading Coal & Iron Company. Before BROWN, C. J., MESTREZAT, ELKIN, STEWART and FRAZER, JJ. Affirmed.

Assumpsit to recover balance of rent alleged to be due on mining lease. Before PATTERSON, J.

The opinion of the Supreme Court states the facts.

Verdict for plaintiff for $334,297.32 and judgment thereon. Defendant appealed.

*Error assigned,* among others, was the refusal of defendant's motion for judgment n. o. v.

*William Clarke Mason* and *Charles Heebner,* for appellant.

*Charles L. McKeehan,* of *Roberts, Montgomery & McKeehan, Charles S. Wesley* and *John G. Johnson,* for appellees.

OPINION BY MR. JUSTICE MESTREZAT, July 3, 1915:·

This is an action of assumpsit to recover a balance alleged to be due on an anthracite coal lease. The amount claimed is the difference between the total of the amounts paid by the lessee, during the term of the lease, and the total claimed to be due for royalties on coal

mined and shipped from the demised premises, cash to make up the minimum royalties as prescribed by the lease, and a charge of five cents per ton on coal mined from other tracts and carried through the leased tract. The lease was made by Simon P. Wolverton, administrator d. b. n. c. t. a. under the will of Hugh Bellas, deceased, to the Philadelphia and Reading Coal and Iron Company, the defendant, for a term of twenty years from January 1, 1884.

Hugh Bellas died in 1863 possessed of the William Green tract of land, and leaving to survive him three daughters. He left a will by which he appointed three executors who died or renounced, and letters c. t. a. were issued to Franklin B. Gowen, and on his resignation, to Simon P. Wolverton, who acted as administrator until his death in 1910, whereupon letters were issued to the plaintiffs. He empowered his executors to lease or sell the Green tract of land. The will also gave to the executors, or any two of them, "full power to lease, ......sell......all or any part of my estate, real or personal,......and if it happens that only one of the persons named as executors should accept the office or survive, then the power above given to sell real estate shall be executed by him, but only on the written request of my three daughters, or some two of them." The testator's three daughters were his residuary devisees and legatees, and they, or those representing their interests in his estate, executed a writing, dated February 1, 1884, requesting and authorizing Mr. Wolverton, as administrator, to enter into a lease of the Green tract of coal with the defendant for the term of twenty years. This authorization recites that the defendant proposed to take a lease and some of the terms thereof which were embodied in the lease subsequently executed. The defendant, as shown by the recital, proposed to pay a certain rental per ton for the coal mined and removed from the demised premises, "a right-of-way of five cents per ton on all coal mined from other lands and carried through

the improvements agreed to be erected upon the William Green tract, and to sink a shaft and erect a colliery on the said tract of sufficient capacity to mine, prepare and ship 100,000 tons of coal per annum, and from and after January 1, 1888, to mine, prepare and ship, at least 100,000 tons of coal annually, or pay rent for that number of tons."

Mr. Wolverton, as administrator, executed the lease, dated February 1, 1884, for a term of twenty years from January 1, 1884, which recited the authority contained in the will and that he had been authorized and requested by the parties beneficially interested to make the lease.

The lessee covenants: "First. To pay to the party of the first part, as rent for the demised premises," a graduated rent, beginning at thirty-five cents a ton for large and prepared sizes, five cents a ton for buckwheat coal, and three cents a ton for coal dirt, "mined and carried away, or shipped from the demised premises," during the years from 1884 to 1890, then increasing one cent a ton on the large sizes in each year to the end of the term, and one-half cent a ton on the buckwheat and coal dirt from 1894 to the end of the lease. The lessee further covenants: "Second. To pay a rent or right-of-way of five cents per ton on all coal mined from other adjoining lands and carried through the said demised premises, during the said lease, to be paid monthly, at the same time and in the same manner, as herein provided for the payment of rents on coal mined from the demised premises....... Third. To pay the rents in cash at the office of the party of the first part, in the Borough of Sunbury, on the fifteenth day of each and every month during the term hereby created, for all coal mined and shipped from the demised premises during the preceding month....... Fifth. To mine and ship from the demised premises, after the first day of January, Anno Domini one thousand eight hundred and eighty-eight, at least eight thousand three hundred and

thirty-three tons of coal in each and every month, ending with the last day of each month until January first, one thousand eight hundred and ninety,......and if in any one month as aforesaid it shall not have mined and shipped, from the said demised premises at least eight thousand three hundred and thirty-three tons of coal, then to pay to the party of the first part on the fifteenth day of the next succeeding month, in cash, as a liquidated rent for the said demised premises during said month, such a sum of money as, when added to the rents accrued during said month, shall be equal to the sum of $2,917," with a similar provision for a monthly minimum royalty of $3,500 from January 1, 1890, to the end of the term of the lease; "Provided, however, That if the party of the second part shall pay in any one month, under the covenants of the lease, any sum as rent over and above the amount that would be due in such month, if calculated upon the number of tons actually shipped, at the rent per ton herein covenanted to be paid, that then and in such case, the said party of the second part may in any succeeding month (if the said party of the second part shall have mined and shipped and paid rent on at least eight thousand three hundred and thirty-three tons in said succeeding month) deduct the sum paid in any previous month over and above the amount of rent, if calculated upon the actual tonnage aforesaid, from the rent due in such succeeding month upon the surplus amount of coal mined in said succeeding month over and beyond the amount of eight thousand three hundred and thirty-three tons." The sixth covenant by the lessee provides for the sinking of a shaft, the erection of a breaker, etc., by the lessee, capable of producing at least one hundred thousand tons of coal annually.

The plaintiffs claim that the defendant, during the term of the lease, mined from adjoining lands and carried through the demised tract 4,739,192.01 tons of coal, the rent or right-of-way charge on which amounted to $236,959.62; that during the term the minimum royal-

ties payable by the lessee amounted to $658,008, and
that of the total sum due, the lessee has paid $658,008,
leaving a balance still due and unpaid of $236,959.62.
The defendant pleaded non assumpsit, payment, pay-
ment with leave, and the statute of limitations, and filed
an affidavit of defense averring that it had paid all that
was due the plaintiffs under the terms of the lease.   The
tonnage mined and carried through, and the sums paid,
were not in dispute.   There was a verdict and judgment
for the full amount of the claim, with interest, and the
defendant has taken this appeal.

The principal and a controlling question in the case
is whether the minimum monthly royalty or liquidated
rental required to be paid under the lease includes the
right-of-way charge on coal mined on adjoining lands and
carried through the demised premises, or whether the
right-of-way charge is to be paid in addition to the mini-
mum royalty required by the lease to be paid.   The de-
fendant company contends that the word "rents" in the
third and fifth covenants or clauses must be construed as
including the rent or royalty on coal mined on the leased
premises and the rent or right-of-way charge for coal
carried through the tract from other lands and there-
fore the lease authorized the lessee to include the right-
of-way charge as part of the minimum royalty payable
each month; that the plaintiffs are estopped to assert
a contrary interpretation of the lease, and that the suit
is really to recover the right-of-way charge and the writ-
ten evidence shows that it had been paid in full.   The
plaintiffs, on the other hand, claim that the word
"rents," as used in those clauses of the lease, clearly
means only the rentals or royalty on the coal mined from
the demised premises, and hence the lessee was required
by the terms of the lease to pay monthly, in addition to
such rentals and a sum sufficient to make up the mini-
mum royalty, the right-of-way charge on coal carried
from adjoining lands through the leased premises.
They deny that they are estopped from enforcing their

construction of the lease or that the suit was brought to recover the right-of-way charge. The learned court below sustained the plaintiffs' contentions and held that the word "rents" "so clearly refers to the different sums fixed to be paid for the various sizes of coal, that it affords no ground for the claim of ambiguity."

We agree with the learned court's conclusion. The terms of the lease relating to the minimum monthly royalty provide that the lessee shall mine and ship from the demised premises at least 8,333 tons of coal monthly. The lease was made by an administrator with the will annexed and recites that he was empowered by the testator and was authorized and requested by the beneficiaries to enter into it. The written authorization to the administrator by the beneficiaries discloses that the terms proposed by the lessee and accepted by the beneficiaries were certain stipulated rentals for the various sizes of coal mined and shipped from the leased premises and a right-of-way charge of five cents per ton for coal mined on adjoining lands and carried through the demised premises, and that, after a certain date, the lessee should "mine, prepare and ship at least 100,000 tons of coal annually, or pay rent for that number of tons." The right-of-way charge is not referred to as rent in this authorization, which, we think, requires the lessee to pay the charge in addition to the royalty on the minimum quantity of coal which the lessee was to "mine, prepare and ship." Eliminating, however, the beneficiaries' authorization from the case, the terms of the lease itself leave no doubt as to its proper construction. The primary purpose of the lease, as its terms disclose, was mining the coal on the demised premises and the revenue to be derived therefrom by the beneficiaries. The seventh paragraph requires the lessee "to work the veins of coal hereby demised, simultaneously and continuously......to their full capacity." The right or permission of the lessee to use the premises for carrying coal from other lands was of minor importance. The

clause requiring the minimum payment of rentals was inserted in the lease to prevent delay in the development of the coal and not as a spur to the lessee to carry more coal through the leased premises. The fifth clause deals with the minimum royalties and requires the lessee to "mine and ship from the demised premises" the minimum tonnage of 8,333 tons, and if the lessee does not mine and ship that quantity, it is to pay in cash "as a liquidated rent for the said demised premises during said month such a sum of money as, when added to the rents accrued during said month, shall be equal to the sum of $2,917," and later, $3,500. The "rents accrued during said month" manifestly refer to the royalty on the coal "mined and shipped" and not "mined or shipped" from the demised premises. This clause does not deal with, or refer to, the right-of-way charge and makes no provision concerning it. The second clause is the only one requiring the payment of the right-of-way charge, and it provides that the charge shall "be paid monthly, at the same time and in the same manner, as herein provided for the payment of rents on coal mined from the demised premises." This provision clearly refers to the third clause of the lease as the latter clause is the only provision in the lease fixing the place and time of payment of such rents, and shows that clause 3 was dealing with "rents on coal mined from the demised premises." As pointed out by the appellees, the plural word "rents" is used in clause 2 to describe solely "rents on coal mined," which indicates that it was so used in other parts of the lease, and did not include the "rent or right of way" for transportation of coal from other lands.

That the word "rents" in clause 3 does not include the right-of-way charge is further clearly indicated. If so construed, the provision in clause 2 that the right-of-way charge shall be paid "at the same time and in the same manner, as herein provided for the payment of rents on coal mined from the demised premises" would

be surplusage, and this cannot be assumed. Again, the "rents" required by clause 3 to be paid monthly are "for all coal mined and shipped from the demised premises during the preceding month," and the "rents accrued," referred to in clause 5, are for coal "mined and shipped" and clearly do not include "a rent or right-of-way" on coal mined from other adjoining lands and carried through the said demised premises. The words "mined and shipped" are used in the first, third and fifth clauses of the lease in the same sense, and clearly refer to coal which is mined on the leased premises.

It is a rule of construction that an interpretation will not be given one part of a contract which will annul another part of it or produce absurd results. This would obviously occur, as pointed out in the argument, if the appellant's contention be sustained and the phrase "mined and shipped from the demised premises" be construed as including coal mined on adjoining lands and carried through the leased premises, as it would practically nullify the minimum royalty provision. The minimum tonnage required to be mined is 8,333 tons per month, but the provision would not apply if the aggregate tonnage mined and shipped from the demised premises and the aggregate tonnage carried through the premises equalled the minimum tonnage of 8,333 tons. In fact, under the appellant's construction, if the lessee company mined no coal on the leased tract but carried through the tract at least 8,333 tons in any month, which at five cents per ton would amount to $416.65, it would comply with the minimum royalty clause of the lease, and that sum would be the total amount of rentals payable for the month instead of $2,917 or $3,500 as the case might be. Again, under the proviso to the fifth clause, if the lessee mined no coal during a particular month but carried a tonnage of coal across the premises, which at five cents per ton equalled the minimum rental, and paid it, the lessee would be entitled in any succeeding month to mine from the leased premises a tonnage the royalties on

which would equal the amount thus paid, without making any payment therefor.   The defendant, notwithstanding its present contention, always paid the minimum royalty in each month when it mined less than 8,333 tons although the aggregate of the coal mined and carried through the premises exceeded that tonnage.

We are of opinion that, under the terms of the lease, the lessee was required to pay the right-of-way charge in addition to the minimum monthly royalty, and that when it failed to mine 8,333 tons in any month, it was required to pay the difference between the royalties on the coal actually mined and the minimum, and also to pay the right-of-way charge of five cents per ton on all coal carried through the leased premises from the adjoining tracts.

When the terms of a contract are doubtful or capable of two different interpretations, the meaning put on the instrument by the parties themselves may be shown and will be enforced by the courts.   Their interpretation of the instrument is strong evidence of being the correct one, and is expressive of the intention of the parties when they executed the contract.   Where, however, the contract is not ambiguous or uncertain in its terms, and the intention of the parties, as disclosed by its provisions, is not doubtful, the construction acted upon by the parties is not controlling and will not be enforced by the courts.   This is the settled rule of the decisions and of the text-books.   Mr. Page (2 Page on Contracts, Sec. 1126) says: "If a contract is ambiguous in meaning, the practical construction put upon it by the parties thereto is of great weight, even though the contract is in writing, and, ordinarily, is controlling......The practical interpretation of the parties is to be regarded, however, only when the contract is ambiguous.   If clear and free from ambiguity, the intention shown upon its face if written must be followed, though contrary to the practical interpretation of the parties, and even if such practical construction has been acquiesced in for a long

period of time." This is the doctrine of this court as an-
nounced in the recent case of Sternbergh v. Brook, 225
Pa. 279. We do not think the rule of contemporaneous
construction can be invoked in the present case. As sug-
gested above, there is no ambiguity in the terms of the
lease, and the manifest intention of the parties, as dis-
closed by their contract, was that the right-of-way charge
should be paid monthly in addition to the minimum
royalty payable on the coal mined from the demised
premises. We think no other reasonable conclusion can
be drawn from the terms and the manifest purpose of
the lease, and hence in the language of the trial court,
"in such a condition of affairs there is no question of
construction by the parties."

We agree with the learned court below that the plain-
tiffs are not estopped from maintaining this action. In
discharging the rule for a new trial and denying the mo-
tion for judgment non obstante veredicto, the court says:
"These plaintiffs were in the hands of a trustee who col-
lected for them less than they were entitled to receive.
There is no evidence at all that they were in possession
of the knowledge that would be necessary to an under-
standing of the situation, and in addition to that their
failure to demand at the time it was due, all that was
due, worked no harm to the defendant." The facts of
the case do not disclose the elements of an estoppel. An
estoppel can be claimed only by one who has acted in
ignorance of the true state of facts: Hill v. Epley, 31
Pa. 331; Woods v. Wilson, 37 Pa. 379, and who was
without suitable means of informing himself of their
existence: Cuttle v. Brockway, 32 Pa. 45. If he had
notice of the facts and was not misled to his disadvan-
tage, there can be no estoppel: Duquesne Bank's App.,
74 Pa. 426; Wright's App., 99 Pa. 425. Silence becomes
a fraud and works an estoppel only when a party with-
holds information which the other party does not have
or does not possess the means of obtaining, and which
he should have to protect his rights. Where both par-
ties know the facts or have equal means of knowledge of

the facts, the silence of either in regard to them is not a fraud upon the other party: Rhawn v. Edge Hill Furnace Co., 201 Pa. 637.

There is no evidence in the case that the defendant was prejudiced or misled to its injury by the conduct of, or alleged interpretation of the lease by Mr. Wolverton or the beneficially interested parties. The lessee acted with a full knowledge of all the facts. The vouchers accompanied by a statement or memorandum of the tonnage mined on the leased premises and the tonnage carried through the premises were sent to the administrator. The vouchers received by the administrator and returned to the company stated, with very few exceptions, that the sum remitted to him was in payment of "rent on coal mined from the Wm. Green tract" or of the "minimum rental on coal mined from the Wm. Green tract," and the amount was the minimum sum payable for the month. The receipt on the voucher distinctly stated that the sum was "received in full for above account." It is clear, therefore, as observed by the learned court below, that whatever the memorandum or statement accompanying the voucher may have disclosed "what was paid was the 'minimum rental for coal mined.'" Mr. Wolverton so construed the payments to the heirs, as in making the remittance to them he states in his letter that it "is for coal mined during the month" named in the letter. These vouchers and receipts were prepared by, and signed on the request of the defendant company which had full knowledge of their contents and the purpose for which the money was paid and received. The statements or memoranda accompanying the vouchers will, therefore, not estop the plaintiffs here from maintaining the present action. Moreover, the receipts given by Mr. Wolverton to the defendant purporting to be in full of the amount due would not be conclusive on the present plaintiffs if, as it now appears, the sum paid was only a partial payment of the total amount due each month for the coal mined and the coal carried through

the premises: Dunham v. Haggerty, 110 Pa. 560; Commonwealth v. Cummins, 155 Pa. 30; Hillside Coal & Iron Co. v. Sterrick Creek Coal Co., 239 Pa. 359. If it be conceded that Mr. Wolverton intended by his receipts to acknowledge satisfaction in full of the claims presented in the statements, it would not avail the defendant in this action as clearly, under the circumstances, the administrator would have no authority to waive the rights of the beneficiaries to the unpaid portions of the claim: Commonwealth v. Hantz, 2 P. & W. 333; Guillou v. Peterson, 89 Pa. 163; Clemens v. Heckscher, 185 Pa. 476. It is clear, we think, that the beneficiaries are not estopped from maintaining this suit by anything contained in the receipts given to them by Mr. Wolverton as they were not given to the defendant: Loughrey's App., 37 Leg. Intell. 341; Megargel's Adm. v. Megargel, 105 Pa. 475.

There is nothing to support the contention that the defendant was injured by relying upon the acquiescence of the administrator and the heirs in the method of accounting, in that the lessee would have mined more coal upon the leased premises had it understood that the right-of-way charge was to be paid in addition to the minimum royalty. This contention is fully met and refuted by the fact that it paid the royalty on a large quantity of coal which it could have mined but did not mine and ship from the premises. In the absence of evidence to support its contention, there is nothing in the case to warrant the conclusion that the defendant was misled or injured by the acquiescence of the administrator and the Bellas heirs in the method of accounting.

We find nothing in the case that shows the defendant was not fully aware of all the facts when it made the monthly payments, or that the defendant was misled in any way to its injury by the administrator or the Bellas heirs. The defense of estoppel cannot be sustained.

The contention of the appellant that the whole sum claimed by the plaintiffs was paid in full is not tenable.

This action is brought, not for the right-of-way charge, as the defendant seems to think, but for the difference between the total amount paid by the defendant and the total amount due under the lease. The right-of-way charge, as will be observed, was to be paid monthly, at the same time and in the same manner as the royalty on the coal mined. The sum remitted should, therefore, have included the total amount of minimum royalty on coal mined and the amount due for coal carried through the premises, and the defendant having failed to remit the aggregate sum, this suit was brought to recover the balance due.

The amount received by Mr. Wolverton was a part of the larger sum due under the terms of the lease, and was not an accord and satisfaction: Commonwealth v. Cummins, 155 Pa. 30; Amsler v. McClure, 238 Pa. 409. The statements or memoranda, if considered as accounts stated, were not conclusive so as to bar the present action: Jones v. Dunn, 3 W. & S. 109; Vantries v. Richey, 8 W. & S. 87; Allegheny County Light Co. v. Thoma, 31 Pa. Superior Ct. 102.

We have discussed and determined the controlling questions in the case without special reference to the assignments of error. Without further discussion and thereby unduly extending this opinion, it is sufficient to say that a careful examination of the appellant's elaborate brief and the authorities cited therein has not convinced us of any reversible error in the record.

We are all of opinion that the judgment of the court below should be affirmed, and it is so ordered.