## Bishop & Babcock Sales Company v. Seltzer

*Benjamin Neiman* and *Henry B. Friedman,* for plaintiff.

*H. P. McFadden,* for defendant.

PER CURIAM, January 18, 1937.—Plaintiff brought an action in replevin for the recovery of a soda fountain and equipment. Plaintiff had leased the fountain to the firm of Nicas Brothers under a bailment lease, dated May 3, 1931, which stipulated that the price of the fountain was to be $4,860, to be paid in monthly instalments for a period of 48 months. When the instalments were all paid Nicas Brothers were to become the owners of the fountain. This lease is exhibit A of plaintiff's declaration. Before the term expired Nicas Brothers defaulted in the monthly payments, and subsequently, on March 8, 1932, went into bankruptcy. The receiver in bankruptcy, on April 6, 1932, at 10 o'clock in the morning, sold all of the assets of Nicas Brothers, and the same were purchased by defendant Seltzer. Plaintiff filed no reclamation petition prior to the sale, but about two o'clock in the afternoon of the same day it did file a reclamation petition. The effect of the filing of the reclamation petition was discussed before the referee in bankruptcy and before the United States district court, and both of them filed opinions in the matter. The learned counsel for defendant contended that those proceedings were res judicata of the present case. We do not think so.

On the trial plaintiff presented a general point that under the law and the evidence the verdict should be for plaintiff, and defendant presented a point that under the law and the evidence the verdict should be for defendant. The trial judge denied both points, and submitted the question to the jury whether the failure of the Bishop & Babcock Sales Company to file its reclamation petition before the sale acted to the injury of Mr. Seltzer, and also the question whether the sale by the trustee in bankruptcy was intended by him to be a sale of all the right, title and interest of plaintiff's soda fountain. The jury found a

verdict in favor of defendant, and, as plaintiff had taken the property and given bond, assessed the damages at $1,470.

Plaintiff filed a motion for a new trial and a motion for judgment n. o. v. It will not be necessary to discuss the new trial. In our judgment plaintiff's position on the motion n. o. v. is correct. The rule is undoubted in Pennsylvania that the purchaser at a sheriff's sale takes no better title than defendant in the execution had. The authorities are collected in National Cash Register Co. v. Knecht, 24 Northamp. 155. The same rule applies to a sale by a trustee in bankruptcy.

In Munn, Trustee, et al., v. Lorch, 305 Pa. 55, 61, 62, Mr. Justice Maxey said:

"The second question in this case is whether the trustee of the corporation which has since become bankrupt has any higher rights than the corporation itself would have had if not bankrupt. In this case, as in all other cases where the public policy of the State is involved, a trustee's rights rise no higher than that of the bankrupt he represents. The trustee takes his title subject to all the equities between the original parties, and the Bankruptcy Act can give the trustee no greater rights than he would have under the Pennsylvania law. In the case of Davis v. Billings, 254 Pa. 574, this court said: 'It has been definitely decided that a trustee in bankruptcy is vested with no higher or better right or title to the property than the bankrupt had when the trustee's title accrued, and, unless in contravention of some established principle of law, or public policy, or some express provision of the Bankrupt Act, a claim valid against the bankrupt may be held valid against the trustee: Hewit v. Berlin Mach. Works, 194 U. S. 296.' "

In Camp-Osgood-Sleppy, Inc., v. Lehigh Coal Co., 3 Fed. Supp. 96, Judge Johnson said:

"This was a judicial sale, under which the receiver sold only the right, title, and interest which the Lehigh Coal Company had in the property. The receiver made no

representations, and there is no fraud charged. The rule of caveat emptor is strictly applicable to judicial sales, and in such sales there is no implied warranty. The purchaser buys at his own risk. Osterberg v. Union Trust Co., 93 U. S. 424".

That case was affirmed by the circuit court of appeals.

In Handlan v. Bennett, 51 F. (2d) 21, 24, the court said:

"It must be remembered that the doctrine of caveat emptor applies in all its force to judicial sales and that it will be conclusively presumed that the purchaser agrees to take the title such as it is and that if he permits the sale to be confirmed without objection, he cannot afterward refuse to pay the purchase money because of imperfection of title or for errors or irregularities in the proceedings under which he purchased. This rule prevails in bankruptcy sales unless the order of sale itself otherwise provides."

In 6 Remington on Bankruptcy 48, sec. 2567, is the following statement:

"The rule of 'caveat emptor' prevails in bankruptcy sales, as in all judicial sales, unless special direction otherwise is made in the order of sale."

It is unquestioned that plaintiff's rights under exhibit A were not destroyed by the trustee's sale to defendant. Was plaintiff estopped in this suit? The learned counsel for defendant on the argument of this motion stated that he relied on Greenhoe et al. v. College et al., 144 Pa. 131, which he had cited to the court at the trial. It is apparent that the trial judge relied on that case. It appears from the report that plaintiffs and their counsel were present at the sheriff's sale; the lower court said:

". . . it became and was their duty, if you find they had the opportunity, to give notice to the sheriff and to the bidders at that sale, either directly or through the sheriff, that they were the owners of said property, under all the circumstances in the case. And if they failed or neglected to make known their claim, and thereby induced the

sheriff and the bidders to believe that there was no other claimant than the person who had been ruled to interplead and who abandoned his claim in the proceedings in court, then they by negligence permitted the sale to go on, and permitted innocent purchasers to become bidders and buyers, and they are now, as against the sheriff and against such purchasers, estopped from setting up claim to the property."

The jury returned a verdict in favor of defendants. No claim was made by the bailors until two years after the sheriff's sale. The second paragraph of the syllabus is:

"Evidence that the bailors of personal property knew that it was seized as the property of the bailee, at the suit of the latter's creditors, but gave no notice of their claim until nearly two years after the sale of it, was sufficient to submit to the jury to raise an estoppel of the bailors in favor of innocent purchasers."

Mr. Justice McCollum wrote the opinion of the Supreme Court, and discussed the evidence fully at page 138. He said:

"The credit was obtained, the debts were not paid, and the confiding creditors seized the property with the knowledge of the appellants, who made no claim to it, but allowed it to be sold to innocent purchasers in satisfaction of honest debts contracted on the faith of it. It would seem from the conduct of the appellants that when the Geiser Manufacturing Co. withdrew its claim, they had no intention of asserting title to the property, but if they entertained a purpose to do so it was bad faith to the officer, attaching creditors, and purchasers to conceal it. Under the circumstances, it was their duty to announce their claim or abandon it. We think they are estopped by their conduct from claiming the property in dispute, and we dismiss the specifications of error."

That case is entirely unlike the present case. It is true that Mr. Seltzer made inquiries as to the filing of plaintiff's claim in this county and with the referee, and he was not negligent, but that is not the important thing. The

important thing is: What did plaintiff herein do which misled defendant? The only thing it did not do was to file its reclamation petition until a few hours after the sale. That was not sufficient to estop it in the present case, and the trial judge should have said so as a matter of law. The principle applicable to estoppel is well stated by Mr. Justice Kephart in Fedas v. Insurance Company of the State of Pa., 300 Pa. 555, 560:

"An estoppel exists where one by his words or conduct causes another to believe in the existence of a state of facts, inducing reliance thereon in some act of mutual concern, and the inducing person wishes to assert, prejudicially, facts in opposition to those first held out to be true, on which action was taken. This cannot be done; the one making the inducement is estopped. But one is not estopped unless the contemplated action would prejudicially injure another."

In Tustin v. Philadelphia & Reading Coal & Iron Co., 250 Pa. 425, 436, Mr. Justice Mestrezat said:

"An estoppel can be claimed only by one who has acted in ignorance of the true state of facts: Hill v. Epley, 31 Pa. 331; Woods v. Wilson, 37 Pa. 379, and who was without suitable means of informing himself of their existence: Cuttle v. Brockway, 32 Pa. 45. If he had notice of the facts and was not misled to his disadvantage, there can be no estoppel: Duquesne Bank's App., 74 Pa. 426; Wright's App., 99 Pa. 425. Silence becomes a fraud and works an estoppel only when a party withholds information which the other party does not have or does not possess the means of obtaining, and which he should have to protect his rights. Where both parties know the facts or have equal means of knowledge of the facts, the silence of either in regard to them is not a fraud upon the other party: Rhawn v. Edge Hill Furnace Co., 201 Pa. 637."

In Kennedy's Estate, 321 Pa. 225, Mr. Justice Barnes approves the following quotation from Philadelphia & Reading Coal & Iron Co. v. Schmidt, 254 Pa. 351, 357:

"An estoppel may be raised by acquiescence, where a

party aware of his own rights, sees the other party acting upon a mistaken notion of his rights. 'The rule is well recognized that when a party with full knowledge, or with sufficient notice or means of knowledge of his rights and of all the material facts, remains inactive for a considerable time or abstains from impeaching the transaction, so that the other party is induced to suppose that it is recognized, this is acquiescence, and the transaction, although originally impeachable, becomes unimpeachable' ".

In the present case there is no evidence that plaintiff knew what defendant had done, or that plaintiff induced defendant to do anything in prejudice to his rights. Plaintiff was a trifle late in filing its reclamation petition, but it intended to file it, and it should not be penalized by its neglect to the extent of losing the very property it was seeking to reclaim.

And now, January 18, 1937, the motion of plaintiff for judgment n. o. v. is granted, and judgment is entered for plaintiff for the property described in the writ, together with costs.